Argued and submitted November 3, 2005, on appeal, reversed in part and remanded with instructions to enter summary judgment for third-party defendant Acceptance Insurance Company; otherwise affirmed; cross-appeal dismissed as moot August 2, both petitions for review denied December 5, 2006 (342 Or 116)

RICK FRANKLIN CORPORATION,
*Appellant,*

*v.*

STATE OF OREGON,
acting by and through the
DEPARTMENT OF TRANSPORTATION,
Highway Division;
Lori Larkin and Robert Larkin,
dba Larkin Transport,
*Defendants,*

*and*

CANAL INSURANCE COMPANY,
*Respondent.*

Lori LARKIN
and Robert Larkin,
dba Larkin Transport,
*Respondents - Cross-Appellants,*

*v.*

ACCEPTANCE INSURANCE COMPANY,
*Appellant - Cross-Respondent,*

*and*

HUDSON INSURANCE AGENCY, INC.,
*Third-Party Defendant.*

98-10244CV; A121634

140 P3d 1136

184

Daniel E. O'Leary argued the cause for appellant. With him on the briefs were Christopher F. McCracken and Davis Wright Tremaine LLP.

Michael A. Lehner argued the cause for appellant - cross-respondent Acceptance Insurance Company. With him on the briefs was Lehner & Rodrigues PC.

Timothy J. O'Hanlon argued the cause for respondent Canal Insurance Company. With him on the brief was Mautz Baum & O'Hanlon, LLP.

David C. Landis argued the cause and filed the briefs for respondents - cross-appellants Lori Larkin and Robert Larkin, dba Larkin Transport.

Before Edmonds, Presiding Judge, and Linder and Wollheim, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

This case involves the responsibility of a primary and an excess insurer for the costs of environmental cleanup after gasoline from the insureds' tanker truck spilled. The insureds are Lori and Robert Larkin, doing business as Larkin Transport (Larkin). The company that performed the environmental cleanup is Rick Franklin Corporation (RFC). The primary insurer for Larkin is Canal Insurance Company (Canal). The excess insurer is Acceptance Insurance Company (Acceptance). The trial court granted summary judgment to Canal on RFC's claim against it and to Larkin on its claim against Acceptance. ORCP 47 C. Both RFC and Acceptance appeal. Larkin cross-appeals an award of attorney fees and prejudgment interest. On appeal, we affirm the judgment entered in favor of Canal and reverse the judgment in favor of Larkin. As a result of our determination that Acceptance is entitled to summary judgment, Larkin's cross-appeal is moot.

On June 30, 1998, Lori Larkin was driving a gasoline tanker belonging to Larkin on Highway 395 between John Day and Pendleton when the tanker trailer became unhinged from the tractor, overturned, and spilled gasoline onto the highway and into the surrounding environment. RFC, an environmental cleanup contractor, was hired to clean up the spill, at a total cost of $1,658,655.09. After the accident, Larkin notified Canal and Acceptance of a potential claim. Canal accepted coverage and paid out its policy limits to RFC, the State of Oregon, and other entities that performed cleanup services. Acceptance denied coverage. After Canal's payments, the remaining unpaid remediation costs owed by Larkin to RFC were $686,557.97.

RFC brought this action against Canal and Larkin for, among other things, the difference between what Canal paid RFC and Canal's $1 million policy limit, or $27,892.88.[1] In part, RFC claimed that Canal had contracted with it to clean up the spill. The trial court subsequently granted Canal's motion for summary judgment and denied RFC's

---

[1] RFC's claims against Larkin were settled, and Larkin stipulated to entry of judgment for RFC.

cross-motion for summary judgment. RFC assigns error to both those rulings.

■      In response to RFC's complaint, Larkin filed an answer that included a third-party complaint against Acceptance that asserted that Acceptance's policy provides coverage for the cleanup. Larkin sought from Acceptance the balance that it owed RFC. Both Larkin and Acceptance filed cross-motions for summary judgment with respect to that claim. The trial court denied Acceptance's motion and granted Larkin's motion, finding that the policy was ambiguous as to whether it provided coverage for this type of occurrence and should therefore be construed against the drafter of the policy, Acceptance. Acceptance assigns error to the trial court's grant of summary judgment to Larkin on the third-party claim, and to the denial of its motion for summary judgment.[2]

## I.   RFC v. CANAL

In its first assignment of error, RFC argues that the trial court erred in denying its cross-motion for summary judgment because

> "[t]he summary judgment record contained undisputed evidence that: (a) Canal had promised to pay RFC's costs for the clean-up 'up to the policy limits;' (b) RFC acted in reliance on that promise; (c) the policy limit was $1 million; (d) Canal only paid RFC $972,107; and (e) that at a minimum, $27,892.88 remained owing to RFC."

Canal responds that RFC cannot prevail on its cross-motion for summary judgment because it based its argument on a claim that it did not plead, namely, that Timothy O'Hanlon, Canal's attorney, had promised to pay RFC's remediation costs in a July 10, 1998, letter. Canal also argues that there is no evidence from which an objectively reasonable juror could find an express contract between RFC and Canal because Canal unequivocally refused to deal directly with RFC. RFC replies that its second amended complaint

---

[2] Although a party cannot appeal from the denial of a motion for summary judgment, when cross-motions for summary judgment are made, and on the undisputed facts one party must prevail as a matter of law, we may direct the entry of the appropriate judgment. *State Farm Mut. Ins. v. Whitlock*, 59 Or App 303, 309 n 7, 650 P2d 1042 (1982), *rev den*, 294 Or 460 (1983).

alleges a breach of contract action against Canal and that Canal entered into the contract "through its agents," including O'Hanlon.

■    In its second assignment of error, RFC argues that the trial court erred in granting Canal's motion for summary judgment because there are disputed issues of fact about whether Canal promised to pay its full policy limit to RFC and Canal failed to perform that promise; whether Canal knew that Larkin had told RFC that Larkin had $5 million in insurance coverage; whether Canal promised to pay RFC for the cleanup costs; whether RFC relied on that promise to its detriment; whether Canal should have foreseen RFC's reliance; and whether Canal entered into a contract with RFC "akin to a guaranty contract" to pay RFC for performing the cleanup for Larkin. In response, Canal argues that the trial court properly granted its motion for summary judgment because RFC relied on statements made by Lee, an employee of Larkin's insurance broker, and Robert Larkin—persons who were not Canal's agents, and because O'Hanlon did not directly contract with RFC on behalf of Canal.

The trial court concluded that

"[t]he July 10, 1998 letter from Mr. O'Hanlon to Rick Franklin Corporation is not ambiguous. As a matter of law Kathleen Lee and Robert Larkin are not agents of Canal Insurance. Under any of the theories of recovery argued by Rick Franklin Corporation, including its cross-motion for summary judgment, I find that Canal Insurance's motion should be granted and Rick Franklin Corporation's cross-motion denied."

We address the second assignment of error first because it is dispositive.[3] We view the record on summary judgment in the light most favorable to RFC, the party opposing the motion. ORCP 47 D; *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). The day after the June 30, 1998, spill, Lee, who represented that she was an agent for Larkin, hired RFC to commence emergency cleanup.[4] On

---

[3] We assume, without deciding, that RFC properly pleaded its reliance on O'Hanlon's letter in its second amended complaint.

[4] Lee testified in a deposition that she did not hire RFC. However, we assume that she did for purposes of this issue on summary judgment.

July 10, 1998, RFC sent a letter to Canal Insurance, stating that the estimated cost for the cleanup would be between $750,000 and $950,000. The letter also said that "RFC will begin as soon as we receive this form back with the appropriate signatures," and attached a work order that listed Canal as the client and authorized RFC to continue with the cleanup. In an affidavit, a representative of RFC testified that O'Hanlon called him to advise him that the work order should list the client as Larkin Transport, rather than Canal, and assured him that "Canal would be responsible for the payment of the cost of remediation but they could not contract directly with me for the performance of the work." In a later deposition, O'Hanlon asked the RFC representative,

"Q. At the time you created the work order, who did you intend to have execute it?

"A. The insurance company, Canal Insurance Company. That's who it was sent to.

"Q. Did you ever intend to have Robert Larkin execute a work order?

"A. I was told by your office after you received the authorization that I had to, we had to resubmit it to Robert Larkin for his signature.

"Q. And why did you have to resubmit it to Robert Larkin, if you can recall?

"A. Because you asked me to.

"Q. Did I tell you that Canal would not execute a work order with your company?

"A. Yes.

"Q. So, originally you sent a work order to my office to get Canal to execute that document, is that correct?

"A. It was—yes, that's correct.

"Q. And I told you Canal would not execute that document, and would not contract with you, correct?

"A. That's correct."

Nonetheless, RFC contends that a July 10, 1998, letter from O'Hanlon to RFC creates a genuine issue of material

fact about whether Canal contracted with RFC. The letter states, in part:

> "As to the Work Order, you will need to have Bob Larkin execute that document. Canal Insurance cannot contract with you. Canal Insurance's obligation is to its insured and to that insured only. Canal Insurance is willing to pay the reasonable and covered clean up costs incurred by its insured up to the policy limits. However, Canal Insurance is not directly liable to you or to the State for clean up of the spill. The generator or transporter of the spilled substance is the party liable.
>
> "Do not take this letter as an unwillingness on the part of Canal Insurance to pay your reasonable and covered costs. As I advised you yesterday, Canal Insurance is willing, upon Bob Larkin's approval received yesterday, to begin paying for the clean up. Andy Hook advised, he is in a position now to begin expending policy funds on the project as you have outlined it. I understand, you will be sending to Canal Insurance the billing for the first week shortly."

Also, RFC sent a revised work order to Larkin, dated July 10, 1998, which listed Larkin as the client and was signed by Robert Larkin on July 13, 1998, as client representative. The work order states that "the client agrees to the following payment terms: This is a time and materials job and will be billed in accordance with RFC's rate sheet."

Based on the above record, we conclude that the trial court properly granted summary judgment to Canal on RFC's contract and promissory estoppel theories. The formation of a contract requires a meeting of the minds of the parties, a standard that is measured by the objective manifestations of intent by both parties to bind themselves to an agreement. *Vanderselt v. Pope*, 155 Or App 334, 339, 963 P2d 130, *rev den*, 328 Or 194, 977 P2d 1172 (1998). Promissory estoppel requires: (1) a promise, (2) which the promisor, as a reasonable person, could foresee would induce conduct of the kind which occurred, (3) actual reliance on the promise, (4) resulting in a substantial change in position. *Bixler v. First National Bank*, 49 Or App 195, 199-200, 619 P2d 895 (1980).[5]

---

[5] "Promissory estoppel" is not a "cause of action" in itself; rather, it is a subset of a theory of recovery based on a breach of a contract and serves as a substitute for consideration. *Staley v. Taylor*, 165 Or App 256, 261 n 5, 994 P2d 1220 (2000).

Primarily, RFC's arguments depend on its interpretation of the July 10, 1998, letter from O'Hanlon.[6] RFC argues that the letter contains numerous promises that Canal is willing to pay the cleanup costs, citing the language "Canal is willing to pay" and "Canal is willing * * * to begin paying for the cleanup." RFC argues that those statements are "unequivocal," or at the very least, make the letter ambiguous. RFC also argues that, as "further inducement," Canal invited RFC to submit its billings directly to Canal, and that because Canal knew that Larkin had represented that it had $5 million in insurance coverage, it is not proper to assume that the letter's use of the term "policy limits" referred to the $1 million limit on the Canal policy. Thus, RFC concludes, "there exists evidence from which a jury could find that Canal wrote its letter to induce RFC to undertake the work on that basis."

■ The language of a contract must be read in the context of the entire agreement. *Alpine Mountain Homes v. Bear Creek Homes*, 202 Or App 390, 397, 122 P3d 111 (2005). In contrast, the interpretation advanced by RFC would require us to ignore the repetitive language in the letter that limits its commitment; language that states that, "Canal Insurance cannot contract with you[;]" "Canal's obligation is *to its insured and to that insured only*[;]" "Canal is willing to pay the reasonable and covered costs *incurred by its insured*[;]" and "Canal is *not* directly liable to you or to the State for clean up of the spill." (All emphases added.) Finally, the context in which the letter was sent controverts RFC's interpretation of it. Franklin confirmed in his deposition testimony that O'Hanlon told him in the July 10, 1998, phone call that Canal would not execute the work order and would not contract with RFC, and it is undisputed that Canal refused to sign the work order and required RFC to send it to Larkin directly.

In sum, there are no facts in the record from which a reasonable inference could be drawn that RFC and Canal

---

[6] In our view, there is nothing in the summary judgment evidentiary record to create a genuine issue of material fact regarding whether Lee or Larkin was authorized to promise on Canal's behalf to pay for cleanup costs, apart from Canal's obligations under its policy with Larkin.

intended to form a contractual relationship of any kind between themselves for the cleanup; indeed, the undisputed evidence is to the contrary. Similarly, the evidence is uncontradicted that no representative of Canal, including O'Hanlon, made any promise to RFC upon which the latter could reasonably rely to enforce a claim for the costs of cleanup against Canal, apart from Larkin's rights under its policy. RFC was informed unequivocally by O'Hanlon that Canal's obligation "is to its insured and to that insured only." Although his letter states, "Do not take this letter as an unwillingness on the part of Canal Insurance to pay your reasonable and covered costs[,]" and "I understand, you will be sending to Canal Insurance the billing for the first week shortly[,]" those statements were made in the context of Canal's assertions that its liability is limited by the terms of its policy with Larkin. In contrast, the theory pleaded in RFC's complaint does not depend on the promises made in the insurance policy issued by Canal, but on a discrete promise, express or implied, by Canal to pay for the cleanup costs that is unrelated to the terms of Canal's policy. Moreover, there is no evidence that any authorized representative of Canal promised that the full policy limit would be paid to RFC. Consequently, the trial court did not err in granting summary judgment to Canal.

## II.  LARKIN v. ACCEPTANCE

■      We turn now to the grant of summary judgment in favor of Larkin and against Acceptance. In general, Acceptance argues that the trial court erred when it concluded that Acceptance's insurance policy is internally ambiguous, a conclusion that led the court to construe the terms of the policy against Acceptance and to conclude that the policy covered the risk of sudden and accidental release of toxic chemicals into the environment. Acceptance contends that its policy is not ambiguous because an exclusion in the policy expressly removes coverage granted elsewhere in the policy. Larkin counters that the Acceptance policy contains a "following form" endorsement that provides the same coverage as the Canal policy and the presence of both a "following form" endorsement and an absolute exclusion creates an ambiguity that must be construed against the drafter of the policy.

■     An ambiguity in an insurance policy exists when the policy is susceptible to two or more plausible interpretations that withstand scrutiny. The interpretations are reasonable when "examined in the light of, among other things, the particular context in which that term is used in the policy and the broader context of the policy as a whole." *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 470, 836 P2d 703 (1992). The Canal policy covers property damage caused by an occurrence arising out of the use of an owned automobile. It also provides:

"This insurance does not apply:

"* * * * *

"(g)    to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but *this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental*."

(Emphasis added.) The above italicized language, together with the other provisions of Canal's policy, operated to provide coverage under Canal's policy for the damage caused by the spill in this case.

The Acceptance policy is a separate umbrella policy with limits of $4 million and, for purposes of this case, is an excess coverage policy for risks insured against under the Canal policy. The Acceptance policy contains a pollution exclusion, Exclusion (i), that is identical to Exclusion (g) in the Canal policy. The policy also contains a form, "Form 16 Automobile Liability Following Form," that states, in part:

"Except insofar as coverage is available to the Insured in the underlying policies as set forth in the Schedule of Underlying Insurance, this policy does not apply to Personal Injury or Property Damage arising out of the ownership, maintenance, operations, use, loading or unloading of any automobile while away from premises owned by, rented to, or controlled by the Insured."

Those provisions, if there were no other applicable provisions in the policy, would result in coverage under Acceptance's policy for Larkin's cleanup costs after Canal paid out its limits.[7]

Acceptance's policy, however, also contains Form 172 ARC, titled "Pollution Endorsement," that states, in part:

"In consideration of the premium paid and notwithstanding anything contained in this policy to the contrary, it is agreed as follows:

"The coverage afforded by this policy does not apply to:

"* * * * *

"Any bodily injury, personal injury, property damage, costs or other loss or damage arising out of such contamination, including, but not limited to, cleaning up, remedying or detoxifying such contamination[.]"

Acceptance asserts that the language in Form 16, together with the other provisions in its policy, makes clear that its policy unambiguously excludes coverage in this case. Larkin makes two specific arguments in response. First, it says that Form 172 ARC does not limit the coverage under Form 16, which incorporates the automobile coverage from the Canal policy, because there is no language in either form stating that, in the case of an inconsistency between the Canal and Acceptance policies, the Acceptance policy controls. That argument begs the question. While the provision that Larkin suggests could clarify a question of coverage, we are unaware of any Oregon appellate decision (and Larkin cites none) that holds that such language is essential before an excess policy will be construed in a more limited fashion than the underlying primary policy.

■    Instead, our objective in construing a contract of insurance under Oregon law is to determine the intent of the parties regarding the particular policy in issue, an objective that is accomplished by a three-step process. *Hoffman*, 313 Or at 469-71. The first step is to examine the terms and conditions of the policy to determine whether it is ambiguous,

[7] The Acceptance policy also contains a pollution exclusion form. The box on that form is not marked to indicate whether the exclusion is in effect.

that is, whether it is susceptible to more than one plausible interpretation. If it is not, the policy is interpreted in accordance with that unambiguous meaning. *Id.* at 469-70.[8] In *Mays v. Transamerica Ins. Co.*, 103 Or App 578, 585, 799 P2d 653 (1990), *rev den*, 311 Or 150 (1991), we observed that an "[a]mbiguity does not necessarily result because one clause provides coverage and another clause excludes that coverage under certain circumstances. Exclusions are intended to provide exceptions to general coverage."

Alternatively, Larkin argues that a plausible interpretation of the language in Form 172 ARC, "notwithstanding anything contained in this policy," is that that exclusion applies only to coverage that arises under the express terms of the *Acceptance* policy and not to coverage that is incorporated by reference from the Canal policy, as occurs under Form 16. Larkin concludes that, because there are competing plausible interpretations of Form 16 and Form 172 ARC, it was proper for the trial court to construe the policy against Acceptance. With Larkin's argument in mind, we examine each of the pertinent provisions in the Acceptance policy. Exclusion (i) is limited in its scope: it "does not apply if such discharge, dispersal, release or escape is sudden and accidental." Because the release of gasoline in this case was sudden and accidental, exclusion (i) is inapplicable. The language in Form 16, "[e]xcept insofar as coverage is available to the Insured in the underlying policies," means that the Acceptance policy does not provide any coverage beyond that provided in Canal's policy, and, therefore, because there is coverage under Canal's policy for pollution damage that is sudden and accidental, there is also coverage initially provided under the circumstances of this case under Form 16. However, Form 172 ARC operates to exclude part of the coverage that is provided in Form 16. The "notwithstanding anything contained in this policy to the contrary" language in Form 172 ARC is unambiguous and makes the intent of the parties clear; it operates to override *any other provision* in the policy that provides pollution coverage. *Cf. Severy v. Board of*

---

[8] If the text of the policy is ambiguous, we proceed to a second step, that is, to examine the disputed terms in the broader context of the policy as a whole. *Hoffman* at 470. If—and only if—the ambiguity persists, we construe the policy against the drafter, in this case, Acceptance. *Id.* at 470-71.

*Parole*, 318 Or 172, 178, 864 P2d 368 (1993) (function of "notwithstanding" clause is to operate as an exception to that which follows).

Larkin's attempt to create an ambiguity by focusing on the words "this policy" in Form 172 ARC is unconvincing because the words "this policy" are not qualified by any limiting language in Form 172 ARC. The only plausible meaning that can be given to the phrase "notwithstanding anything contained in this policy to the contrary" is that it refers to any coverage provided in the policy, whether the coverage arises because of a provision in Canal's policy or whether the coverage arises because of some other provision in Acceptance's policy. Form 172 ARC also provides that "all other terms and conditions of this policy remain unchanged[,]" further evidencing an intent to have the form apply to all coverage under the policy. Because there is no language in Form 172 ARC to indicate that the pollution coverage provided under Form 16 is exempt from its effect, we conclude that Acceptance's policy is not ambiguous and hold that the trial court erred in granting summary judgment to Larkin on that basis. It follows that the trial court should have granted judgment to Acceptance on its motion for summary judgment.

■ Larkin also makes a cross-assignment of error, contending that Form 172 ARC in the Acceptance policy violates the explanatory title requirement of ORS 742.246(2) (1999), as interpreted by the Supreme Court in *Fleming v. United Services Automobile Assn.*, 330 Or 62, 996 P2d 501 (2000). In Larkin's view, we are therefore required to construe the policy as if it did not contain Form 172 ARC. Acceptance responds that Larkin's reliance on that statute is misplaced because it does not apply to general liability insurance policies or excess liability policies, but is limited by its terms to fire insurance policies, and that *Fleming* did not extend the application of the statute beyond fire insurance policies.

ORS 742.246 (1999) provided, in part:

"(1) A fire insurer may add to the provisions required by ORS 742.202 other conditions, provisions and agreements not in conflict with law or contrary to public policy.

"(2) Any provision restricting or abridging the rights of the insured under the policy must be preceded by a sufficiently explanatory title printed or written in type not smaller than eight-point capital letters."[9]

In *Fleming*, the court held that ORS 742.246(2) applied to the fire policy under question even though it provided other kinds of coverage:

"ORS 742.246(1) permits a fire insurer to add provisions to its policy. ORS 742.246(2) requires '[a]ny provision' in the policy to comply with the title requirements specified in that subsection. Nothing in ORS 742.246(1) suggests that a fire insurer may avoid the explanatory title requirements in ORS 742.246(2) simply by including provisions in addition to those that are required to be in a standard fire insurance policy."

*Fleming*, 330 Or at 68. We do not understand *Fleming* to have expanded the scope of the statute to apply to all insurance policies, which is the apparent ramification of Larkin's argument. Rather, we think that the Supreme Court intended the decision in *Fleming* to be confined to its facts. Acceptance's policy is not a fire insurance policy, and we therefore conclude that ORS 742.246(2) is not applicable to Acceptance's policy and reject Larkin's cross-assignment of error.

Because we reverse the judgment against Acceptance, we dismiss Larkin's cross-appeal regarding the amount of attorney fees that the court awarded.

On appeal, reversed in part and remanded with instructions to enter summary judgment for third-party defendant Acceptance Insurance Company; otherwise affirmed. Cross-appeal dismissed as moot.

---

[9] ORS 742.246 was amended in 2001 to add a third subsection, which is not relevant to this discussion. That subsection provides:

"(3) This section applies only to standard fire insurance policies as described in ORS 742.202 and does not apply to any other insurance policies."