Argued and submitted September 28, 2010, affirmed August 31, petition for
review denied November 10, 2011 (351 Or 318)

Eddie E. DRURY,
former Personal Representative for
the Estate of Dorothy J. Drury, Deceased,
*Plaintiff below,*
*and*

Douglas M. FELLOWS,
Personal Representative for
the Estate of Dorothy J. Drury, Deceased,
*Plaintiff-Respondent,*

*v.*

ASSISTED LIVING CONCEPTS, INC.
and Kim Maree Lewis,
*Defendants-Appellants,*
*and*

Stefany CAMENISCH,
*Defendant below.*

Multnomah County Circuit Court
080405881; A141068

262 P3d 1162

Thomas W. Sondag argued the cause for appellants. With him on the briefs was Lane Powell, PC.

Patrick L. Block argued the cause for respondent. With him on the brief was Rogers & Block, LLP.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Landau, Judge pro tempore.

ORTEGA, P. J.

**ORTEGA, P. J.**

Defendants appeal from an order denying their petition to compel arbitration of plaintiff's claims for wrongful death. ORS 36.730(1)(a). Because we conclude that plaintiff is not bound by the contract containing the arbitration provision on which defendants rely, we affirm.

We understand the following facts to be undisputed. Defendant Assisted Living Concepts, Inc. (ALC) owns an assisted living facility. Defendant Kim Maree Lewis was the executive director of the facility. The arbitration provision at issue appears in the Residency Agreement that was executed when Dorothy Drury (decedent) was admitted as a resident of the facility. The Residency Agreement provides, in part, that the parties agree to binding arbitration of all claims or disputes "arising out of or in any way relating to this Agreement or breach of this Agreement, [and] the services or care provided to You by Us."

Decedent did not sign the Residency Agreement. Instead, all of the admission paperwork, including the Residency Agreement, was completed by her son, Eddie Drury, though he was not then decedent's guardian, conservator, personal representative, or trustee and did not have power of attorney for decedent.

Decedent's mental functioning was severely impaired at that time. About a week before execution of the Residency Agreement, decedent's physician had indicated that decedent needed to move into an assisted living facility because she suffered from dementia and was unable to manage her own affairs, including activities of daily living, medical decisions, and financial matters. Medical records from later that month also indicate that decedent had experienced worsening memory loss, was slow to respond and appeared at times to be sleeping, had abnormal cognitive functioning, and was confused. A nursing assessment of decedent from the following month likewise noted dementia, chronic confusion, and memory impairment.

After about one year in the assisted living facility, decedent died as the result of injuries sustained in a fall. Plaintiff, the personal representative of decedent's estate,

sued defendants for wrongful death, and defendants moved to compel arbitration.[1] Plaintiff responded, in part, that decedent was not bound by the Residency Agreement. Because the trial court denied defendants' motion on the basis of unconscionability, it did not decide whether decedent was bound by the Residency Agreement.[2]

On appeal, defendants argue, among other things, that the agreement binds plaintiff because decedent was a third-party beneficiary of the Residency Agreement. Plaintiff contends that decedent's estate is not bound by that agreement, because decedent never executed it, Eddie Drury had no authority to execute it on her behalf, and she is not bound by it as a third-party beneficiary. We agree with plaintiff that, under these circumstances, plaintiff is not bound by the Residency Agreement, to which decedent never assented. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (explaining that, under "right for the wrong reason" principle, reviewing court may affirm lower court on an alternative basis if evidentiary record is

---

[1] We note that, though the claim arises out of the services provided to decedent by defendants and is therefore within the scope of the arbitration provision, plaintiff does not assert a claim under the Residency Agreement itself or argue that defendants failed to meet an obligation under that agreement. Rather, plaintiff asserts that defendants engaged in negligent conduct while decedent was a resident in the facility.

[2] The parties fully argued to the trial court the issue of whether decedent was bound as a third-party beneficiary. In response to defendants' motion to compel arbitration, plaintiff argued, in part, that the arbitration clause in the Residency Agreement was unenforceable because decedent did not sign it and Eddie Drury lacked authority to sign it on her behalf. Plaintiff contended that decedent "cannot be a third party beneficiary of a contract to which she did not consent" and that Oregon cases regarding third-party beneficiaries "do not hold that a party to the contract can enforce rights against a nonparty third party beneficiary who is not bringing any claim whatsoever under the contract." Defendants responded that decedent ratified the Residency Agreement by accepting benefits under it and that she was bound to the agreement as a third-party beneficiary. In a supplemental memorandum in opposition to defendants' motion to compel arbitration, plaintiff contended that decedent could not have ratified the Residency Agreement, because she was suffering from dementia and never had any knowledge of the terms of the agreement. The issue also was argued at two hearings. In a letter opinion on defendants' motion to compel arbitration, the trial court explained that it was denying the motion on the basis of unconscionability and, accordingly, that it did not need to reach any other issues concerning the agreement's enforceability. Defendants made additional arguments to the trial court about agency and ratification as bases for enforcing the Residency Agreement against plaintiff, but they do not reassert those arguments on appeal.

sufficient, which requires "(1) that the facts of record be sufficient to support the alternative basis for affirmance; (2) that the trial court's ruling be consistent with the view of the evidence under the alternative basis for affirmance; and (3) that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below").

We begin with the basic principles at issue in this case.[3] Arbitration arises as "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Technologies v. Communications Workers*, 475 US 643, 648, 106 S Ct 1415, 89 L Ed 2d 648 (1986) (citation and internal quotation marks omitted). To form a contract, there must be "a meeting of the minds of the parties, a standard that is measured by the objective manifestations of intent by both parties to bind themselves to an agreement." *Rick Franklin Corp. v. State Dept. of Transportation*, 207 Or App 183, 190, 140 P3d 1136, *rev den*, 342 Or 116 (2006) (citation omitted).

Where parties enter into a contract and intend to benefit a third party, the third party may assert a claim on the promise made for his or her benefit. *Sisters of St. Joseph v. Russell*, 318 Or 370, 374-75, 867 P2d 1377 (1994). "In such case the third party acquires an equitable interest in the property, fund, or thing; and the law, acting upon the relationship of the parties and their treatment of the fund, establishes the requisite privity, creates a duty, and implies a promise which will support the action[.]" *Feldman v. McGuire*, 34 Or 309, 311, 55 P 872 (1899) (citations omitted). In other words, the law implies a relationship between the contracting parties and the intended third-party beneficiary.

Where the third-party beneficiary seeks to enforce rights under a contract, the beneficiary's assent to be bound by the contract may be presumed. Thus, in *Erickson v.*

[3] The parties dispute whether the Federal Arbitration Act (FAA) applies to this case, although plaintiff offers no real argument to support the assertion that it does not. Either way, our inquiry is the same: Under the FAA, state contract law applies to determine whether a contract is enforceable against a nonparty. *Arthur Andersen LLP v. Carlisle*, 556 US 624, 630, 129 S Ct 1896, 1902, 173 L Ed 2d 832 (2009).

*Grande Ronde Lbr. Co.*, 162 Or 556, 576-78, 92 P2d 170, *on reh'g*, 94 P2d 139 (1939), where the defendants contended that the plaintiff was barred from asserting his rights as a third-party beneficiary because he had not accepted the contract within a reasonable time, the court concluded that the beneficiary's assent is presumed from his assertion of rights under the contract:

> "For instance, in *Baker and Smith v. Eglin*, 11 Or. 333, 8 P. 280, this court said:
>
> " 'The assent of the third person, for whose benefit the contract is made, will be presumed.'
>
> "From *Schneider v. White*, 12 Or. 503, 8 P. 652, we quote:
>
> " 'That an action can be maintained by A upon a promise made by B upon a consideration moving from C to pay A a sum of money, even though A was not informed thereof until afterwards, is too well settled to require authority to support the proposition.'
>
> "From 12 Am. Jur., Contracts, p. 841, § 288, we quote:
>
> " 'No express assent or formal acceptance by the plaintiff is necessary. His assent and acceptance will be presumed.'
>
> "Page on Contracts, § 2392, states:
>
> " 'His act in maintaining an action upon such contract is a sufficient assent.' "

*Erickson*, 162 Or at 577-78.

Thus, under proper circumstances, an arbitration provision may be enforced against a third-party beneficiary.[4] *See, e.g., Arthur Andersen LLP v. Carlisle*, 556 US 624, 630, 129 S Ct 1896, 1902, 173 L Ed 2d 832 (2009) (noting that traditional principles "allow a contract to be enforced by or against nonparties to the contract through 'assumption,

---

[4] We note that, where an arbitration clause is broad enough, a nonsignatory may be able to enforce the clause against a signatory. *See, e.g., Livingston v. Metropolitan Pediatrics, LLC*, 234 Or App 137, 149-51, 227 P3d 796 (2010) (concluding that a broad arbitration clause in an agreement between an employer and an employee entitled nonsignatory defendants to arbitration of the employee's claims against them arising out of the agreement).

piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel'" (quoting 21 R. Lord, *Williston on Contracts* § 57:19, 183 (4th ed 2001))). Consistently with general contract principles, however, "[a] third party beneficiary might in certain circumstances have the power to sue under a contract; it certainly cannot be *bound* to a contract it did not sign or otherwise assent to." *Comer v. Micor, Inc.*, 436 F3d 1098, 1102 (9th Cir 2006) (citations omitted; emphasis in original). In *Comer*, therefore, a participant in an Employee Retirement Income Security Act (ERISA) plan was not compelled to arbitrate his claims for breach of fiduciary duty, brought on behalf of the plan against investment advisors; although the plan trustees and the investment advisors had agreed to arbitrate claims, the plan participant did not sign the agreement, seek to enforce it, or take advantage of the agreement. *Id.* at 1100, 1102.

Here, defendants are correct that decedent was a third-party donee beneficiary of the Residency Agreement, which specifically provided for services to be provided to her, and that she could have asserted rights under that contract. *See Sisters of St. Joseph*, 318 Or at 375 (explaining that donee beneficiary status arises where a promisee, with intent to make a gift to or confer a right on the beneficiary, obtains a promisor's promise to perform, and the promisee does not owe that performance to the beneficiary). Some courts have treated that as the end of the matter, simply holding that an intended third-party beneficiary is bound by the terms of the contract without addressing whether the beneficiary assented to the contract. *See, e.g., JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F3d 596, 600 (5th Cir 2007) (concluding that a nursing home resident was bound by the arbitration clause of a contract that she did not sign where she was an intended third-party beneficiary of that contract); *Forest Hill Nursing Center, Inc. v. McFarlan*, 995 So 2d 775, 782-83 (Miss Ct App 2008) (ordering arbitration of personal injury claims asserted by a nursing home resident who did not sign the contract at issue but was a third-party beneficiary); *Alterra Healthcare Corp. v. Linton*, 32 Fla L Weekly D574, 953 So 2d 574, 579 (Fla Dist Ct App 2007) (holding that an assisted living facility resident's estate could be compelled to

arbitrate negligence claims because the resident was a third-party beneficiary of a contract containing arbitration clause). Such analysis is incomplete, however, without an examination of whether the third-party beneficiary somehow manifested assent to be bound by the agreement—for example, by ratifying it or asserting a claim for relief under the agreement. To hold otherwise is to allow contracting parties to alter the rights of a third party, based on whatever consideration the contracting parties intended to provide to the third party, and without regard for whether the third party deems that consideration to be an adequate exchange for the contractual obligations.[5]

We turn, then to the question whether decedent manifested her assent to the terms of the Residency Agreement. "It is a principle universally recognized that only the mentally competent can enter into a binding contractual engagement and so, too, the further rule that silence and inaction do not amount to an acceptance of an offer." *State Land Board v. United States*, 222 Or 40, 48, 352 P2d 539 (1960), *rev'd on other grounds*, 366 US 643, 81 S Ct 1278, 6 L Ed 2d 575 (1961) (citations omitted). Capacity requires that a person be able to understand the nature and effect of his or her actions and the business being transacted. *Dillin v. Alexander*, 281 Or 679, 684-85, 576 P2d 1248 (1978). Capacity "includes the ability to reason and exercise judgment and, in essence, to bargain with the other party." *Uribe v. Olson*, 42 Or App 647, 651, 601 P2d 818 (1979) (citation omitted).

Here, decedent was suffering from dementia and was confused at the time the Residency Agreement was executed; indeed, she needed an assisted living facility precisely because she was unable to manage her affairs, including decisions about medical and financial matters. Under other circumstances, we might conclude that a beneficiary who accepts services and an apartment—as decedent did—has claimed the benefits of the agreement and thus manifested her assent. In this case, however, decedent's acceptance of

---

[5] For example, unless the third-party beneficiary in some way assents to a contract containing an arbitration clause, the contracting parties have waived the beneficiary's right to a jury trial without her consent. *Cf. Barackman v. Anderson*, 338 Or 365, 371-72, 109 P3d 370 (2005) (concluding that binding arbitration did not deprive the plaintiff, who voluntarily chose to arbitrate, of her right to a jury trial).

those benefits cannot amount to assent to assume a contractual obligation, because she lacked capacity to give such assent, and her actions did not bind her to the Residency Agreement. Nor has plaintiff assented to the contract on decedent's behalf, for example, by bringing a claim asserting rights under the Residency Agreement. Instead, plaintiff asserts only claims for wrongful death. Because decedent was not bound by the Residency Agreement, the trial court did not err by denying defendants' petition to compel arbitration.

Affirmed.