ORTEGA, P. J.
*735 Defendants appeal from an order denying their motion to dismiss and compel arbitration of plaintiff's claim for wrongful death. ORS 36.730(1)(a). Plaintiff is the personal representative for the estate of Olivia Bates, who was two days old when she died from complications of her birth at defendant Andaluz Waterbirth Center (Andaluz). Defendants sought to dismiss the wrongful death action and compel arbitration based on an arbitration clause in the "Midwife Disclosure and Consent" form that Olivia's mother, Stephanie Bates, had signed when she was about four months pregnant with Olivia. The trial court denied that motion, and defendants appeal. Under the circumstances presented here, we conclude that Olivia was not bound by the arbitration agreement in the Midwife Disclosure and Consent form and, accordingly, affirm.
The relevant facts are undisputed. In July 2014, Stephanie Bates sought prenatal and birth care at Andaluz. Before receiving care, she signed a "Midwife Disclosure and Consent" (Midwife Disclosure). The Midwife Disclosure is a two-and one-half page form and is signed only by Stephanie.
*512 On the first page and the beginning of the second page, the Midwife Disclosure describes the experience of the midwives who work at Andaluz. It then provides information and disclosures about the services offered, and not offered, at Andaluz, separated by the following headings: "Services provided to mother and baby," "Responsibilities of the mother and her family," "The risks inherent in birth and malpractice coverage disclosure," "Types of emergency medicine and equipment used," "Transfer of Care and Transport Plan," "Fees for services including financial arrangements," and "Our philosophy of birth." Of relevance to this proceeding, the "Services provided to mother and baby" section provides:
"The Andaluz midwives provide continuity of care. Two midwives will serve you during your pregnancy and birth, in our birth center or your home. Besides your two midwives, Andaluz also uses the assistance of midwife apprentices whom you will meet at your prenatal visits. The apprentices are trained in labor, birth, and postpartum *736 care and are well on their way to becoming midwives themselves. We provide childbirth classes, lab work throughout the pregnancy (lab fees are separate), one hour prenatal visits every four weeks until 32 weeks, every two weeks until 36 weeks, then every week until birth, 24-hour on-call services for labor and other emergency needs, labor and delivery care in one of our birthing suites or in your home, meals for you and your partner during your stay at the birth center, newborn exam after delivery, 1-2 day postpartum care at the birth center, four postpartum visits for baby and mother at 3 days, 1 week, 3 weeks, and 6 weeks, contraceptive counseling and pap smear."
After the sections named above, the Midwife Disclosure sets out the following statement:
"I plan to give birth at the Andaluz Waterbirth Center or at home with a midwife in attendance. I have read, discussed, and signed our midwives disclosure statement and agree to read the financial agreement and risk assessment criteria as listed in the Birthing Center High Risk Factors form and OAR 332-025-0021."
Following that statement, the Midwife Disclosure finally provides, directly before a signature line, the arbitration agreement that is at issue in this proceeding. That provision provides:
"If Arbitration or Mediation Is Required
"I understand that the midwives and facility at Andaluz Waterbirth Center do not carry malpractice insurance.
"Any dispute or claim that arises out of or relates to this agreement, or care given and received, or to the interpretation or breach thereof, or to the existence, scope, or validity of this agreement, shall be resolved by arbitration in accordance with the then effective arbitration of (and by filing a claim with) Arbitration Service of Portland, Inc. and judgment upon the decision rendered pursuant to such arbitration may be entered in any court having jurisdiction thereof.
"If the parties prefer mediation to resolve a dispute, this can be done through a mediator selected and agreed upon by the parties. The parties acknowledge that mediation helps parties settle their dispute and any party may propose mediation whenever appropriate."
*737 After signing the Midwife Disclosure, Stephanie received prenatal care from Andaluz. In December 2014, Stephanie went into labor and delivered Olivia at Andaluz's center. Shortly after Olivia's birth, she was transported to the hospital by ambulance. Two days later Olivia died in the hospital from complications resulting from the circumstances of her birth.
Plaintiff, the personal representative of Olivia's estate and Olivia's father, brought a wrongful death action against defendants. Defendants sought to dismiss that action and compel arbitration of plaintiff's claim based on the arbitration clause in the Midwife Disclosure that Stephanie had signed while pregnant with Olivia. The trial court denied that motion, concluding that Stephanie's signature was not effective to waive Olivia's constitutional right to a jury trial. Defendants appeal that order.
On appeal, defendants argue that Olivia was bound by the arbitration agreement in *513 the Midwife Disclosure because Stephanie signed the agreement on behalf of Olivia. Defendants assert that that is the case because the Midwife Disclosure covered care for Olivia's delivery, as well as postpartum exams for Olivia. Defendants further argue that Stephanie had the authority to bind Olivia to the arbitration agreement because Olivia could not have done so on her own behalf and that Stephanie did so to obtain medical care for Olivia. Defendants argue that Stephanie was not required to obtain any special authority to act on behalf of her unborn child.
Plaintiff responds that the text of the Midwife Disclosure does not purport to bind Olivia to the arbitration agreement and there is no evidence that Stephanie and Andaluz intended to so bind Olivia. Further, plaintiff argues, Stephanie had no notice that she was being asked to so bind Olivia. Plaintiff thus asserts that defendants cannot treat Olivia as a party to the arbitration agreement and take away her fundamental right to a jury trial. Plaintiff further argues that a parent's consent to medical care for a child is a separate issue and cannot constitute a waiver of the child's right to a jury trial. Finally, plaintiff also responds that *738 Stephanie did not have authority to bind Olivia, or Olivia's estate, to the arbitration agreement.
Reviewing for legal error, DeLashmutt v. Parker Group Investments, LLC , 276 Or. App. 42, 44, 366 P.3d 769 (2016), we conclude that the trial court did not err because, as a matter of contract interpretation, Stephanie did not bind Olivia to the arbitration agreement when she signed the Midwife Disclosure. Based on that disposition, we do not reach the issue of whether Stephanie had the authority to bind Olivia to an arbitration agreement.
"Arbitration arises as 'a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " Drury v. Assisted Living Concepts, Inc. , 245 Or. App. 217, 221, 262 P.3d 1162 (2011) (quoting AT&T Technologies v. Communications Workers , 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) ). Under Oregon's Uniform Arbitration Act, it is for the court to "decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate."[1] ORS 36.620(2). We make that decision applying ordinary rules of contract formation and interpretation. DeLashmutt , 276 Or. App. at 46, 366 P.3d 769.
"To form a contract, there must be 'a meeting of the minds of the parties, a standard that is measured by the objective manifestations of intent by both parties to bind themselves to an agreement.' " Drury , 245 Or. App. at 221, 262 P.3d 1162 (quoting Rick Franklin Corp. v. State Dept. of Transportation , 207 Or. App. 183, 190, 140 P.3d 1136, rev. den. , 342 Or. 116, 149 P.3d 138 (2006)). And, in interpreting a contract, we follow the steps in Yogman v. Parrott , 325 Or. 358, 937 P.2d 1019 (1997). First, we "examine[ ] the text of the disputed provision, in the context of the document as a whole. If the provision is clear, the analysis ends." Id. at 361, 937 P.2d 1019. If the provision is ambiguous, we proceed to the next steps as provided in Yogman . Id. at 363, 937 P.2d 1019. Here, we conclude that the Midwife Disclosure is not ambiguous and, based on the text and context of that document, *739 Stephanie did not sign on behalf of Olivia, nor was Olivia otherwise made a party to the arbitration agreement.
As set out above, the arbitration agreement appeared in the Midwife Disclosure after the statement of acknowledgment of having read the disclosure and immediately before a signature line. Throughout the document, the Midwife Disclosure uses the terms "you" and "I," and the signature line provided only for Stephanie to sign in her individual capacity. The document also makes references to "the client," which in context each refer to the person giving birth. The Midwife Disclosure, however, does not identify the expected child as a client, a patient, or a party.
*514 Further, the arbitration agreement itself begins with an "I" statement and contains no text providing that it would bind anyone other than Stephanie. Although the arbitration agreement covers "[a]ny dispute or claim that arises out of or relates to this agreement, or care given and received," it does not include any text that would cover any person other than Stephanie herself; that is, by its terms, the arbitration agreement only applies to "any dispute or claim" belonging to Stephanie or Andaluz, the parties to the Midwife Disclosure. There is nothing in the text or context of the arbitration agreement, or in the remainder of the Midwife Disclosure, that evinces an intent of the parties that Stephanie would, by signing in her individual capacity, also be signing on behalf of her expected child.
Defendants nonetheless assert that Stephanie was signing the arbitration agreement on behalf of Olivia because the services section of the Midwife Disclosure set out care for her expected child during delivery and after the birth.[2] We disagree. The only mention of the expected *740 child in the Midwife Disclosure is in the one line in the services section that provides that Andaluz offers, as part of its services, delivery care, a newborn exam after delivery, and four postpartum visits for "baby and mother." Nothing in the Midwife Disclosure evinces an intent of the parties to have Stephanie bind her expected child to the arbitration agreement; it only provided that the parties anticipated that some medical care would be given to the expected child. Impliedly giving parental consent for some medical care of Olivia, as provided in the description of services offered by Andaluz, did not constitute signing the contract on behalf of Olivia.
In addition, nothing in the text or context of the Midwife Disclosure conditioned, either expressly or implicitly, the provision of care to the expected child on Stephanie signing the arbitration agreement on behalf of her expected child. Indeed, the only thing Stephanie was agreeing to, with regard to the portion of the Midwife Disclosure that came before the arbitration agreement, was that
"I plan to give birth at the Andaluz Waterbirth Center or at home with a midwife in attendance. I have read, discussed, and signed our midwives disclosure statement and agree to read the financial agreement and risk assessment criteria as listed in the Birthing Center High Risk Factors form and OAR 332-025-0021."
If the parties had intended to make the expected child a party to the Midwife Disclosure and arbitration agreement, they could have expressed that intent in any number of ways; however, they did not do so. We thus conclude that Stephanie *741 did not sign the Midwife Disclosure on behalf of Olivia, and Olivia is not a party to the arbitration agreement. *515 That, however, does not end our inquiry. Although not directly raised by defendants, their arguments suggest an assertion that Olivia is bound by the arbitration agreement as an intended third-party beneficiary. We agree that Olivia was an intended third-party beneficiary because the Midwife Disclosure anticipated that defendants would provide care for Olivia. Thus, we address whether Olivia was bound by the arbitration agreement as a third-party beneficiary and conclude that she was not.
"[U]nder proper circumstances, an arbitration provision may be enforced against a third-party beneficiary." Drury , 245 Or. App. at 222, 262 P.3d 1162. "Consistently with general contract principles, however, '[a] third party beneficiary might in certain circumstances have the power to sue under a contract; it certainly cannot be bound to a contract it did not sign or otherwise assent to.' " Id . at 223, 262 P.3d 1162 (quoting Comer v. Micor, Inc. , 436 F.3d 1098, 1102 (9th Cir. 2006) (emphasis in Comer )). Thus, to hold a third-party beneficiary bound to an arbitration agreement, the third-party beneficiary must have "manifested assent to be bound by the agreement-for example, by ratifying it or asserting a claim for relief under the agreement." Id . at 224, 262 P.3d 1162 ; see also id. at 224 n. 5, 262 P.3d 1162 (noting that, "[f]or example, unless the third-party beneficiary in some way assents to a contract containing an arbitration clause, the contracting parties have waived the beneficiary's right to a jury trial without her consent").
Here, the parties agree that Olivia, as a newborn, did not have capacity to assent to the arbitration agreement in her own behalf. Rather, defendants assert, that by consenting to care for Olivia, Stephanie assented to the arbitration agreement on behalf of Olivia. We conclude, however, that, assuming without deciding that Stephanie could assent on Olivia's behalf, she did not do so under the circumstances here. As set out above, nothing in the Midwife Disclosure would have alerted Stephanie that her assent on Olivia's behalf was being sought or given. Nor has plaintiff, as the personal representative for Olivia's estate, assented to the Midwife Disclosure by bringing a claim that asserts *742 rights under that document. Instead, plaintiff asserts only a claim for wrongful death.
Because we conclude that Olivia was not bound by the arbitration agreement in the Midwife Disclosure, the trial court did not err in denying defendants' motion to dismiss and compel arbitration.
Affirmed.

The parties agree that Oregon law applies because either the issue presented is not one that requires application of federal law under the Federal Arbitration Act or federal law would not supply a different rule of decision. See DeLashmutt , 276 Or. App. at 44 n. 2, 366 P.3d 769 (applying Oregon law under those circumstances).

In support of their argument, defendants cite to cases from other jurisdictions that have concluded that the child was bound by an arbitration agreement contained within a parental consent to medical care for that child. We do not find that authority persuasive because, unlike in this case, the contracts at issue in those cases expressly sought to bind the child to the arbitration agreement. See, e.g. , Pietrelli v. Peacock , 13 Cal. App. 4th 943, 16 Cal. Rptr. 2d 688 (1993) (a newborn was bound to a contract signed by that mother which provided she was signing on behalf of "persons born or unborn, on behalf of whom I have the power to contract"); Bolanos v. Khalatian , 231 Cal. App. 3d 1586, 283 Cal. Rptr. 209 (1991) (a newborn daughter was bound by an arbitration agreement signed by the mother which provided, among other things, "It is the intention of the parties that this agreement bind all parties whose claims may arise out of or relate to treatment or services provided by the physician including any spouse or heirs of the patient and any children, whether born or unborn, at the time of the occurrence giving rise to any claim. In the case of any pregnant mother, the term 'patient' herein shall mean both the mother and the mother's expected child or children."); MN MedInvest Co., L.P. v. Estate of Nichols , 908 So. 2d 1178 (Fla. App. 2005), rev. den. , 924 So. 2d 809 (Fla. 2006) (a minor child was bound by an arbitration clause in a contract which the mother signed that was solely for the provision of medical care for the child); Leong by Leong v. Kaiser Foundation Hospitals , 71 Haw. 240, 788 P.2d 164 (1990) (a minor dependent-beneficiary member of an insurance plan was bound by an arbitration clause in a group medical insurance that applied to members); McKinstry v. Valley Obstetrics-Gynecology Clinic, P.C. , 428 Mich. 167, 405 N.W. 2d 88 (1987) (a newborn was bound by an arbitration agreement signed by mother in the name of "Baby or Babies McKinstry").