Argued and submitted October 12, affirmed November 9, 2022, petition for review denied March 30, 2023 (370 Or 828)

Angela WINAMAKI,
on behalf of herself and all others similarly situated,
*Plaintiff-Appellant,*

*v.*

UMPQUA BANK,
*Defendant-Respondent.*

Multnomah County Circuit Court
19CV52252; A175148

521 P3d 846

Plaintiff appeals from a judgment for defendant Umpqua Bank after the trial court granted Umpqua Bank's motion to dismiss plaintiff's claims, brought on her own behalf and on behalf of a proposed class of plaintiffs, for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the Unlawful Trade Practices Act, challenging Umpqua Bank's practice of assessing multiple nonsufficient funds or overdraft fees on the same, small-dollar electronic payments or checks each time they are resubmitted by the merchant. *Held*: The trial court did not err in granting Umpqua Bank's motion to dismiss plaintiff's claims under ORCP 21 for failure to state a claim, because plaintiff's checking-account agreement with Umpqua Bank unambiguously authorized the challenged fees.

Affirmed.

Judith H. Matarazzo, Judge.

Nadia H. Dahab argued the cause for appellant. Also on the briefs were David F. Sugerman and Sugerman Law Office.

Bruce L. Campbell argued the cause for respondent. Also on the brief were Joshua M. Sasaki and Miller Nash LLP.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Plaintiff Angela Winamaki brought this action on her own behalf and on behalf of a proposed class of plaintiffs for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the Unlawful Trade Practices Act (UTPA), challenging defendant Umpqua Bank's practice of assessing multiple nonsufficient funds (NSF) or overdraft fees on the same, small-dollar electronic payments or checks each time they are resubmitted by the merchant. Based on its conclusion that plaintiff's checking-account agreement with defendant unambiguously authorized the challenged fees, the trial court granted defendant's motion to dismiss the complaint under ORCP 21 A(8) for failure to state a claim and entered judgment for defendant.[1]

Plaintiff appeals, contending that the trial court misconstrued the checking-account agreement. In reviewing the trial court's ruling dismissing the claims on the pleadings, we assume the truth of all well-pleaded allegations and all reasonable inferences favorable to plaintiff that may be drawn from those allegations. *Tomlinson v. Metropolitan Pediatrics, LLC*, 362 Or 431, 434, 412 P3d 133 (2018). A determination whether the facts alleged are sufficient to state a claim is a question of law. *Id*. at 439. We conclude that the trial court did not err and therefore affirm.

The facts as alleged in plaintiff's complaint are largely undisputed. Plaintiff was a checking-account customer of defendant Umpqua Bank and signed a signature card and checking-account agreement. Plaintiff authorized two electronic payments from her checking account to merchants, who then processed the transactions through an automated clearing house (ACH), which electronically forwarded the charges to defendant.[2] Plaintiff's account did not have sufficient funds to cover the payments. The merchants

---

[1] We note that ORCP 21 A was amended effective January 1, 2022. In this opinion, we apply the former version, which was the version applicable at the time the court ruled on defendant's motion to dismiss.

[2] The account agreement defined an ACH item as

"an electronic deposit to or withdrawal from your account, such as a directly deposited payroll check or a bill payment, sent to us through the 'automated clearing house,' which is an electronic network that sends and receives those transactions."

processed plaintiff's payments a second time, and plaintiff's account still did not have sufficient funds to cover the payments. Defendant "returned"—*i.e.*, did not pay—the requested payments three times for insufficient funds and covered one of requested payments, even though it resulted in an overdraft of plaintiff's account. Defendant charged plaintiff a fee of $35 each time it processed the merchant's request for a payment for which there were insufficient funds, for fees totaling $140.

Plaintiff does not dispute that defendant was authorized to assess a fee of $35 for insufficient funds the first time that each of the merchants processed her unsuccessful payments, for total fees of $70 for the two transactions, but she argues that defendant violated the terms of the checking-account agreement by assessing two subsequent fees when the merchants made a second attempt to process payments for plaintiff's purchases. Defendant responds that the fees that it assessed for repeated processing attempts are authorized by the checking-account agreement between plaintiff and defendant.

The issues on appeal thus narrowly depend on a construction of the checking-account agreement with respect to its authorization of the disputed fees, which, in the absence of an ambiguity, is a question of law for the court. *Patel v. Siddhi Hospitality, LLC*, 312 Or App 347, 352-53, 495 P3d 693 (2021). In construing the meaning of the agreement, the court follows the template for contract construction articulated in *Yogman v. Parrott*, 325 Or 358, 361-64, 937 P2d 1019 (1997). The court first examines the text of the disputed provisions in the context of the agreement as a whole and in light of the circumstances underlying the contract formation. *Id.*; *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 315-17, 129 P3d 773, *rev den*, 341 Or 366 (2006) (examining at the first step—in addition to the

---

The Sixth Circuit explained in *Lossia v. Flagstar Bancorp, Inc.*, 895 F3d 423, 426 (6th Cir 2018):

"There are five parties to an ACH transaction: (1) the Originator (here, the individual merchant with whom [the customer] did business); (2) the Originating Depository Financial Institution, or ODFI (the merchant's bank); (3) the ACH Operator (the Federal Reserve); (4) the Receiver ([the customer]); (5) the Receiving Depository Financial Institution, or RDFI ([the customer's bank])."

text and context—evidence of the circumstances underlying the contract formation, if provided by the parties). If, after that examination, the provision is clear, the court's analysis ends, and the provision is applied as the court has construed it. *Bates v. Andaluz Waterbirth Center*, 298 Or App 733, 738, 447 P3d 510, *rev den*, 366 Or 292 (2020).

If, however, the court determines that the agreement is ambiguous on its face, the court looks to extrinsic evidence, if there is any, to resolve the ambiguity. If there is no extrinsic evidence, or if the extrinsic evidence does not give rise to an issue of fact, a construction of the contract remains a legal matter for the court, which can apply maxims of construction to resolve the ambiguity. *Yogman*, 325 Or at 364; *Bush v. City of Prineville*, 301 Or App 674, 680, 457 P3d 324 (2020).

We summarize the provisions of the account agreement that bear on the issues.[3] The agreement informed customers:

> "If a check, *item or transaction* is presented without sufficient funds in your account to pay it, [defendant] may, at [its] discretion, pay the item (creating an overdraft) or return the item for insufficient funds (non-sufficient funds - NSF)."

(Emphasis added.) The account agreement defined an "item" as "any check, ACH funds transfer, ATM withdrawal, debit card purchase, fee charge, or other amount that is added to or subtracted from your account."

The overdraft disclosure statement of the account agreement set forth defendant's authority to assess fees for an overdraft:

> "**What fees will I be charged if I have an overdraft?**
>
> "Under our standard overdraft services:
>
> "• We will charge you a fee of $35 each time we pay or return a transaction that overdraws your checking account. If multiple transactions are paid or returned in one day, we will limit the accumulation of those fees to $175 per day."

---

[3] It is undisputed that the account agreement consisted of four documents that defendant provided to plaintiff and that constitute the contract covering plaintiff's account.

(Boldface in original.) The "Other Account Services" document of the account agreement provided that a service fee of $35 would be assessed for an "overdraft paid item" or a "non-sufficient funds (NSF) returned item."

As noted, the merchants from whom plaintiff made her purchases processed plaintiff's attempted electronic payments by ACH. ACH transactions are made through an automated clearing house network and are governed by the National Automated Clearing House Association Operating Rules and Guidelines (NACHA Rules). The NACHA Rules are incorporated into the account agreement, and customers agree to abide by them. The NACHA Rules require that a bank process all transactions submitted through the ACH network. If the first transaction is returned because of insufficient funds, the NACHA Rules permit a merchant to resubmit the transaction two more times. Each resubmission must be processed by the customer's bank.

In her first assignment of error on appeal, plaintiff asserts that the account agreement unambiguously permitted only one NSF fee per "item" initiated by the account holder—that is, one fee for each unsuccessful attempted electronic payment; alternatively, she argues that the account agreement is ambiguous as to whether it permits more than one NSF fee for an unsuccessful attempted electronic payment and that that ambiguity presents a question of fact that precludes judgment on the pleadings.

As we have frequently said, the threshold to show ambiguity is not high. *Adair Homes, Inc. v. Dunn Carney*, 262 Or App 273, 277, 325 P3d 49, *rev den*, 335 Or 879 (2014). "A contract term is ambiguous if, when examined in the context of the contract as a whole and the circumstances of contract formation, it is susceptible to more than one plausible interpretation." *Id*. When a contract's provisions are internally inconsistent regarding a subject, the contract is ambiguous regarding that subject. *Id*. at 278.

In arguing that the account agreement permits only one fee per transaction initiated by the account holder or is, at best, ambiguous on that subject, plaintiff emphasizes the account agreement's listing, in the document entitled "Other Account Services," of a fee charged for the particular

"item." Plaintiff acknowledges—indeed argues—that the agreement authorized the assessment of a fee for *each item* initiated by the account holder that defendant either returned or paid when plaintiff's account contained insufficient funds to make the requested payment. But in plaintiff's view, the terms of the account agreement unambiguously, or at least plausibly, can be understood to require that an "item" is a transaction initiated by the account holder, not the merchant, that a new item is not created when a payment initiated by the account holder is reprocessed by a merchant through the ACH network, and that only one fee may be assessed on an item initiated by the account holder.

As a matter of contract construction, we conclude that plaintiff's understanding of what constitutes an "item" is incorrect.[4] The account agreement defines an "item" as "any check, ACH funds transfer, ATM withdrawal, debit card purchase, fee charge, or other amount that is added to or subtracted from your account." Most of those transactions are indeed initiated by the account holder, but not all of them. For example, an "item" includes an ACH—a transfer of funds through an automated clearing house—which occurs each time a merchant attempts to process a payment. It also includes a "fee charge," which could be an amount charged by the bank or by a third party. An "item" also includes any "other amount that is added to or subtracted from your account," *i.e.*, any transaction that affects the balance of the account.

We further conclude, as a matter of contract construction, that defendant's authority under the account agreement to assess a service fee for an "overdraft paid item" or a "non-sufficient funds (NSF) returned item" does not limit defendant to assessing a single fee for the account holder's unsuccessful payment. Although the account agreement

_____

[4] Plaintiff cites a number of federal district court decisions that she asserts support her view that it is at least plausible that the account agreement authorizes only one fee per "item." Those decisions involved account agreements different from the agreement here. Additionally, as explained below, the authorization to assess a fee under the Umpqua agreement does not depend exclusively on the initiation of an "item." Thus, whether a fee is being assessed more than once on an item is not the dispositive issue.

authorizes a fee for an "item," nowhere does it state that *only* a single fee may be assessed on an unsuccessful electronic payment. Furthermore, the overdraft disclosure statement of the account agreement provides that

> "a fee of $35 [may be assessed] each time we pay or return a transaction that overdraws your checking account."

Under the NACHA Rules, which are incorporated by reference into the account agreement, defendant was required to process and either pay or return the merchant's resubmissions of plaintiff's payments to ACH and, at each attempted processing, funds were insufficient in plaintiff's account. Reading the account agreement as a whole, *Yogman*, 325 Or at 361, and especially in light of the overdraft disclosure statement, we conclude that it unambiguously authorized defendant to charge a fee of $35 each time defendant paid or returned a transaction when funds were insufficient in plaintiff's account to cover the payment, including the times that defendant paid or returned transactions reprocessed by a merchant.

The trial court did not err in concluding that the account agreement is unambiguous and that it authorized the charges incurred by plaintiff. Thus, the trial court did not err in granting defendant's motion to dismiss the breach of contract claim. That conclusion also resolves plaintiff's second assignment, in which she contends that the trial court erred in dismissing her claims for breach of the duty of good faith and fair dealing and violation of the UTPA.

Affirmed.