Submitted December 17, 2015, affirmed January 21, 2016

Agnes DeLASHMUTT,
an individual,
*Plaintiff,*

*v.*

PARKER GROUP INVESTMENTS, LLC,
an Oregon limited liability company;
Jeffrey Parker, an individual;
and Bill Wilt, an individual,
*Defendants.*

PARKER GROUP INVESTMENTS, LLC,
an Oregon limited liability company;
Jeffrey Parker, an individual;
and Bill Wilt, an individual,
*Third-Party Plaintiffs-Respondents,*

*v.*

Kameron DeLASHMUTT,
an individual,
*Third-Party Defendant-Appellant,*

*and*

GENESIS DEVELOPMENT GROUP, LLC,
an Oregon limited liability company;
and John Does 1-5,
*Counterclaim Defendants.*

Deschutes County Circuit Court
14CV0071; A157940

366 P3d 769

Gary Underwood Scharff and Law Office of Gary Underwood Scharff filed the briefs for appellant.

Thomas A. Larkin, Tyler J. Stori, and Stewart Sokol & Larkin LLC, filed the brief for respondents Parker Group Investments, LLC, and Jeffrey Parker.

Craig A. Nichols and Nichols & Associates for respondent Bill Wilt joined the brief of respondents Parker Group Investments, LLC, and Jeffrey Parker.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

LAGESEN, J.

**LAGESEN, J.**

This is an interlocutory appeal of an order denying third-party defendant Kameron DeLashmutt's petition to abate and compel arbitration.[1] We review for legal error, *Citigroup Smith Barney v. Henderson*, 241 Or App 65, 69, 250 P3d 926 (2011), and affirm.[2]

This dispute arises from the various parties' roles in attempting to develop and finance a new destination resort in Central Oregon. The facts pertinent to the issue on appeal are for the most part procedural and undisputed. In June 2007, five parties, including Kameron DeLashmutt,[3] entered into an "Investment Agreement" for the purpose of developing a new destination resort in Central Oregon. The Investment Agreement identifies Parker Group Investment, LLC, as the "Lender" and identifies Thornburgh Resort Company, LLC, as the "Borrower." Consistent with those designations, it specifies that Parker Group will make several loans to Thornburgh Resort for the purpose of developing the destination resort. The Investment Agreement further provides that Parker Group and Thornburgh Resort will work together to negotiate a bridge loan and development loan to Thornburgh Resort from other lenders, and that Kameron, Jeffrey Parker, and Bill Wilt "are expected to personally guaranty [Thornburgh Resort's] performance of its obligations under the Bridge Loan and the Development Loan," if the lenders for those loans so require.

The Investment Agreement contains a section addressing dispute resolution, Paragraph 12.3. Paragraph 12.3, by

---

[1] ORS 36.730(1)(a) provides that, "[a]n appeal may be taken from *** [a]n order denying a petition to compel arbitration."

[2] We apply Oregon law because no party argues that the issues presented in this case require us to look to federal law under the Federal Arbitration Act or that federal law under the Federal Arbitration Act would supply a different rule of decision than that provided by Oregon law. We note that the Investment Agreement itself provides that the agreement is "governed by and construed and enforced with the provisions of the laws of the United States of America and the laws of the State of Oregon (without regard to the choice of law or conflicts of laws provisions of the laws of the State of Oregon)."

[3] Kameron DeLashmutt's mother, Agnes DeLashmutt, is also a party to this case. For the purpose of clarity, we use the DeLashmutts' first names to identify them throughout this opinion.

its terms, addresses the resolution of disputes "between the Borrower and Lender":

> "This paragraph concerns the resolution of any controversies or claims between the Borrower and Lender, whether arising in contract, tort, or by statute, including but not limited to controversies or claims that arise out of or relate to (i) this Agreement (including any renewals, extensions or modifications) or (ii) any document related to this Agreement (collectively a 'Claim')."

It provides further that "[a]ny Claim shall be submitted to binding arbitration in accordance with the Arbitration Services of Portland in effect at the time of submission."

After Parker Group, Thornburgh Resort, Kameron, Parker, and Wilt executed the Investment Agreement, the Trail Crossing Trust, of which Kameron's mother, Agnes DeLashmutt, was a trustee, loaned a total of $122,000 to Thornburgh Resort. Thornburgh Resort executed promissory notes in favor of the Trail Crossing Trust and its trustees; Parker Group, Parker, and Wilt all executed guarantees, promising repayment of the obligations evidenced by the promissory notes. Thereafter, the Trail Crossing Trust assigned the notes and guarantees to Agnes.

Thornburgh Resort defaulted on the notes. Agnes initiated this action against Parker Group, Parker, and Wilt to enforce the guarantees and recover the money due under the notes. They responded by asserting counterclaims against Agnes, and naming Kameron as an additional counterclaim defendant. They also alleged third-party claims against Kameron for contractual and common-law indemnity.

In response, Kameron petitioned the court to compel arbitration of the counterclaims and third-party claims asserted against him by Parker Group, Parker, and Wilt. He contended that the arbitration provisions of Paragraph 12.3 of the Investment Agreement require arbitration of the claims that Parker Group, Parker, and Wilt brought against him. Parker Group, Parker, and Wilt opposed the petition on the ground that the arbitration provision, by its plain terms, applies only to disputes between the "Lender" (Parker

Group) and the "Borrower" (Thornburgh Resort) and, therefore, does not apply to the disputes between Kameron, on the one hand, and Parker Group, Parker, and Wilt, on the other. The trial court denied the petition. As allowed by ORS 36.730, Kameron appeals the trial court's order denying his request to compel arbitration.

"[P]arties may not be required to arbitrate disputes that they did not agree to arbitrate[.]" *Adair Homes, Inc. v. Dunn Carney*, 262 Or App 273, 286, 325 P3d 49, *rev den*, 355 Or 879 (2014). Here, Kameron contends that the Investment Agreement represents an agreement to arbitrate the claims that Parker Group, Parker, and Wilt have asserted against him. Accordingly, the question whether those claims are subject to arbitration is a question of contract interpretation and, in particular, a question of the proper construction of the arbitration provisions of the Investment Agreement. *Industra/Matrix Joint Venture v. Pope & Talbot*, 341 Or 321, 332, 142 P3d 1044 (2006); *Peace River Seed Co-Op v. Proseeds Marketing*, 204 Or App 523, 530-31, 132 P3d 31, *rev den*, 341 Or 216 (2006).

To answer that question, we apply the ordinary rules of contract interpretation. *Adair Homes Inc.*, 262 Or App at 284-86. If the text and context of the pertinent provisions of the Investment Agreement afford an unambiguous answer to that question, "then our analysis is complete and we give the appropriate effect to the parties' intentions." *Industra/Matrix Joint Venture*, 341 Or at 332. If, however, the text and context are ambiguous as to the parties' intent, we proceed to the other steps of contract interpretation to the extent necessary to ascertain the parties' intent, looking at extrinsic evidence of the parties' intent and applying maxims of contract interpretation—including a presumption in favor of arbitrability. *Id.* at 332-33; *see also Adair Homes Inc.*, 262 Or App at 284-86.

Here, the Investment Agreement is unambiguous as to the scope of the parties' agreement to arbitrate and, in particular, demonstrates that the parties did not agree to arbitrate the claims and counterclaims that Parker Group, Parker, and Wilt have asserted against Kameron. The Investment Agreement states that there are five separate

parties to it: Thornburgh Resort; Parker Group; Parker; Wilt; and Kameron. It also specifies—unambiguously—that references to "Borrower" are to Thornburgh Resort, and that references to "Lender" are to Parker Group. Finally, the terms of the paragraph governing arbitration state—also unambiguously—that the paragraph applies to disputes between the Borrower and the Lender: "This paragraph concerns the resolution of any controversies or claims between *the Borrower and Lender*[.]" (Emphasis added.) In other words, the Investment Agreement's arbitration provisions, by their terms, apply only to disputes between Thornburgh Resort (the "Borrower") and Parker Group (the "Lender"). That indicates that the parties' agreement to arbitrate extends only to disputes between those two entities, and does not encompass disputes between different sets of parties to the Investment Agreement, such as the one at issue in this case.

Kameron has identified nothing in the context of the arbitration provisions that suggests otherwise. Instead, he acknowledges that the arbitration provisions, by their express terms, apply only to disputes between "the Borrower and the Lender." He also acknowledges that, for purposes of the Investment Agreement, Thornburgh Resort is the "Borrower" and Parker Group is the "Lender." He nonetheless argues that it "exalts form over substance, and inconvenience over efficiency, for no discernible reason that would benefit either side or the enterprise" to conclude that the parties agreed to arbitrate only the disputes between Thornburgh Resorts and Parker Group, and did not agree to arbitrate disputes involving the individual people who were parties to the Investment Agreement. Even if Kameron is right on those points, we are not empowered to rewrite the parties' agreement for them. *See* ORS 42.230 ("In the construction of an instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted * * *."). We also are not persuaded that it "exalts form over substance" to conclude that the parties intended for the arbitration provision to be limited in scope. The parties may have had their own sound reasons for wanting to arbitrate disputes between the entities that signed onto the Investment Agreement, but not

wanting to arbitrate disputes involving the individuals who joined it. Regardless, the choice was theirs to make, and the plain terms of the parties' agreement evidence the choice that the parties did, in fact, make.

Kameron also points to a line of our cases emphasizing a strong presumption in favor of arbitration. He argues that those cases compel the conclusion that the arbitration provisions must be construed to require arbitration of the dispute between Kameron and Parker Group, Parker, and Wilt. However, as we recently explained in *Adair Homes Inc.*, the presumption in favor of arbitration identified in those cases does not supplant the ordinary rules of contract interpretation. 262 Or App at 286 ("[I]n applying our usual principles of contract interpretation to an arbitration provision, we resort to the general policy in favor of arbitration only when a contract is ambiguous *and* there is no extrinsic evidence of the parties' intent."). Rather, it applies only where an arbitration agreement is ambiguous and extrinsic evidence does not resolve the ambiguity. *Id.* Here, an application of the ordinary rules of contract interpretation leads to the conclusion that the arbitration provision is unambiguous and, by its terms, applies only to disputes between Thornburgh Resorts and Parker Group, and not to disputes involving other parties. In the absence of an ambiguity, the presumption in favor of arbitration does not bear on our analysis and does not permit us to expand the scope of the arbitration provisions of the Investment Agreement to cover disputes that the parties did not agree to arbitrate. *Id.*

In sum, the arbitration provisions of the Investment Agreement do not cover the third-party claims and counterclaims asserted against Kameron because those claims are not claims between Parker Group and Thornburgh Resort, the only parties covered by the arbitration provisions. The trial court therefore correctly denied the petition to compel arbitration and we must affirm.

Affirmed.