DeVORE, P.J.
*144 *43 This case involves the procedure to compel arbitration and the applicability of a contractual arbitration provision to defendants who are not parties to the contract. We conclude that the trial court did not err in denying petitions to arbitrate or in concluding that the arbitration provision was not applicable. We affirm.
I. PROCEDURAL BACKGROUND
A. Contracts and Claims
The Eugene Water and Electric Board (EWEB) entered into an agreement with MWH Americas, Inc. (MWH) for the engineering of improvements to the Leaburg Dam on the McKenzie River. In turn, MWH facilitated the bidding process through which EWEB selected Advanced American Construction (AAC) as the general contractor for construction of the project. EWEB, as the owner of the property, and AAC, as the general contractor, executed the prime contract. AAC then engaged subcontractors MacTaggart, Scott & Company Limited (MacTaggart) and Olsson Industrial Electric, Inc. (Olsson). When the improvements failed, EWEB filed a complaint against AAC and MWH in Lane County Circuit Court on May 5, 2015. AAC filed third-party claims against MacTaggart and Olsson, and EWEB filed claims against the subcontractors in an amended complaint.
In three separate orders, the trial court rejected petitions by defendants to stay judicial proceedings and compel arbitration of EWEB's claims against AAC and MacTaggart, and the third-party claims of AAC against MacTaggart and Olsson. The court concluded that there was no enforceable agreement to arbitrate between EWEB and MacTaggart or Olsson. See ORS 36.625(1) ("On petition of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate," the court shall order the parties to arbitration, "unless it finds that there is no enforceable agreement to arbitrate."). Defendants have assigned error to each of the orders. We write to address each contention.
*44 B. Order of September 9, 2015
The first order on appeal, entered on September 9, 2015, rejected a petition by AAC to compel arbitration of EWEB's claims against AAC and to stay judicial proceedings pending arbitration. We recount the proceedings to explain the order. On June 19, 2015, AAC filed a third-party complaint naming MacTaggart and Olsson as third-party defendants. Simultaneously, AAC filed a "petition to stay judicial proceeding and compel arbitration," seeking to have "the parties compelled to pursue their claims via private binding arbitration," pursuant to provisions in AAC's contract with EWEB (the prime contract). AAC alleged in its petition that EWEB and AAC had entered into a contractual relationship relating to improvements to the Leaburg Dam and that EWEB had asserted claims against AAC relating to services provided under the contract. AAC alleged that, pursuant to the contract between EWEB and AAC, either party was entitled to request arbitration. AAC alleged that, in light of the contractual provisions, the court should stay judicial proceedings and the parties should be compelled to pursue their claims via private, binding arbitration. Critically, as we will later explain, AAC's petition did not allege that EWEB had refused a request to arbitrate any claims between EWEB and AAC.
AAC also sought a stay of the third-party proceeding pending arbitration "to have the entirety of these third party claims also abated and compelled to independent private binding arbitration." On July 2, 2015, MWH filed a response to AAC's petition and an answer and affirmative defenses to EWEB's complaint. MWH did not seek arbitration.
On July 6, 2015, EWEB filed a response to AAC's petition, asserting that AAC
"has no power to cut off EWEB's jury trial right and right to immediate recourse against MWH . The contract between EWEB and MWH does not include an arbitration provision *** and MWH has not consented to arbitration."
(EWEB's emphasis and boldface.) EWEB acknowledged, however, that EWEB and AAC had a contractual agreement for arbitration *145 and asked the court to deny the stay "to the extent that it includes any parties other than EWEB and *45 [AAC]." (Emphasis added.) EWEB requested an order "establishing parallel litigation tracks, allowing EWEB to simultaneously pursue its claims against [AAC] in arbitration and its claims against MWH here, in Lane County Circuit Court." On July 17, 2015, AAC replied that it conceded that "[t]he intent of the pending Petition was to address those claims between AAC and EWEB."[1]
On August 26, 2015, third-party defendant MacTaggart filed a response to AAC's petition, denying "that it may be compelled to arbitrate the claims asserted by AAC." MacTaggart noted that AAC had not produced any signed written agreement between AAC and MacTaggart requiring arbitration. Nevertheless, "in the interest of efficient resolution of all claims and judicial economy," MacTaggart agreed to consent to "participated in such arbitration" on certain conditions, including the conditions that it be "permitted to provide input on the choice of the third arbitrator (the other two having already been selected by AAC and EWEB)," and that MacTaggart "will not be deemed to have waived any right, defense or claim of any kind by consenting to arbitration."
On the same day, August 26, 2015, EWEB and AAC filed a "stipulation to stay proceedings" between EWEB and AAC pending resolution of the arbitration. Their filing stated that AAC and EWEB
"hereby stipulate to entry of an order staying proceedings related to claims between EWEB and [AAC] in this case, until resolution of Arbitration of the claims between EWEB
*46 and [AAC]. This Stipulation does not stay the remaining claims pending in this case between any other parties."
On August 31, 2015, each of the parties appeared at a hearing on the petitions before Judge Carlson. At the hearing, counsel for EWEB expressed doubt about the desirability of the arbitration to which it had stipulated. EWEB's misgivings were based on MacTaggart's position that it could not be compelled to arbitrate the third-party claims asserted by AAC and by MWH's choice not to participate in private arbitration. EWEB's counsel observed:
"[W]e end up with a very unattractive procedural posture standing here today. ***
"EWEB's strong preference is to have everything come in a single forum, all at once, quickly, so that it can recover and pay for the repairs happening at the Leaburg Dam right now. So the issue is what to do with this stipulation.
"Standing here today, I'd ask that we just set this stipulation aside, look at what's best for the Court and the parties. The likelihood of us resolving the arbitration with just AAC, prior to what the Court expects in terms of judicial finality at the trial level, is incredibly low and will be very complicated and expensive, not just for EWEB as a public entity, but for the other businesses that are involved in this dispute.
"So EWEB would like for all of this to proceed in this court all on one schedule and meet this court's docket expectations."
In any event, EWEB added that it would not agree to arbitration of the third-party claims against MacTaggart.
MacTaggart's counsel did not have a signed copy of MacTaggart's contract with AAC, but took the position that provisions in the prime contract between EWEB and AAC, including a "flow-down" provision, authorized *146 it to consent to arbitration, and that it would do so.
Olsson's counsel stated that Olsson did not have an arbitration provision in its agreement with AAC and took the position that the prime contract provided for arbitration between only EWEB and AAC. Olsson took a neutral *47 position as to a stay, expressing a preference for all claims to be litigated in one forum for the sake of efficiency.
Counsel for AAC asked, in light of EWEB's expressed misgivings that seemingly suggested a "refusal" to arbitrate, that the court compel arbitration as to EWEB's claims against AAC pursuant to ORS 36.625(1) and stay any judicial proceeding that involves a claim subject to arbitration.
The court expressed the view that EWEB and AAC could "arbitrate all you want," but that the issue before the court was whether it would stay trial proceedings as to the parties who had not agreed to arbitrate . The court expressed the view that its determination regarding a stay would depend in part on whether the various claims among the parties were severable. Counsel for EWEB asserted that the claims were not severable, explaining that AAC had retained MacTaggart, whose hydraulic motor was alleged to have been the "center of the failure," and that there would be an issue as to whether MWH had sufficiently reviewed MacTaggart's designs. EWEB noted that it was entitled to a jury trial on its claims against MWH, and that if, after discovery, it sought to amend its complaint to add direct claims against the subcontractors, it would have a jury trial right with respect to those claims as well.
AAC's counsel expressed the view that EWEB's claims against AAC were severable from EWEB's claims against MWH and AAC's claims against the third-party defendants.
The court opined at the hearing that the claims were not severable but took the matter under advisement. On September 9, 2015, the court, by Judge Carlson, entered a brief order declining to issue a stay and requiring the parties to set a trial date prior to September 1, 2016.
On September 11, 2015, pursuant to ORS 36.730 (describing interlocutory appeal), AAC and Olsson filed notices of appeal from Judge Carlson's September 9, 2015, order denying AAC's petition for a stay. On October 8, 2015, MacTaggart filed a notice of appeal from the September 9, 2015, order.
*48 In an order of November 5, 2015, discussed further below, the court, by Judge Carlson, clarified its order of September 9, 2015. The court stated that the September 9 order had denied "a motion to stay the balance of the judicial proceeding while [EWEB] and [AAC] participated in contractually mandated arbitration." (Emphasis added.) The court explained that, in its order of September 9, 2015, the court had not addressed arbitration or whether to stay the proceedings as to EWEB and AAC, because those parties had an agreement to arbitrate and had stipulated to arbitration and to a stay of claims between them. That is to say, neither of those parties had refused to arbitrate; absent a refusal, there was no basis for an order. The court clarified that EWEB's claims against AAC were stayed pending arbitration. The court further explained that, because EWEB had no agreement to arbitrate claims against the third-party defendants, the court had denied a stay as to those claims.[2]
C. Order of December 10, 2015
The second order on appeal was entered on December 10, 2015, and addressed stipulated petitions by AAC, MacTaggart, and Olsson, to stay judicial proceedings and compel EWEB to arbitrate all claims. We return to the proceedings to explain that order: After the hearing of August 31, 2015, AAC and MacTaggart filed a joint stipulation in which MacTaggart voluntarily consented to join in and be bound by the arbitration "currently pending and stipulated to between AAC and [EWEB] regarding EWEB's claims arising out of the Leaburg Dam project, and *147 to entry of an order granting AAC's Petition to Stay Judicial Proceedings and Compel Arbitration." The petition did not allege that either AAC, MacTaggart, or EWEB had refused to arbitrate. AAC agreed to allow MacTaggart to appoint a third arbitrator and agreed to entry of an order staying the proceedings against MacTaggart until final resolution in the arbitration of those claims. AAC and Olsson filed a similar stipulation on September 10, 2015, after the trial *49 court's September 9, 2015, order. The petition by AAC and Olsson did not allege that AAC, MacTaggart, or EWEB had refused to arbitrate.
EWEB filed a response in opposition to the stipulated petitions of AAC and the subcontractors. AAC replied that the claims between AAC and Olsson were subject to arbitration by virtue of those parties' separate agreements to arbitrate and because of a "flow-down" provision in the prime contract, and were subject to a stay pursuant to ORS 36.620 and ORS 36.625.
On December 10, 2015, the court, by Judge Rasmussen, issued an "opinion" denying AAC and Olsson's September 10, 2015 "stipulated petition to stay proceeding and compel arbitration." The court explained that AAC, Olsson, and MacTaggart could stipulate to binding arbitration as between themselves, but that they had no ability to stipulate to a stay of the proceeding, and that there was no enforceable agreement between EWEB and the subcontractors on which to base an order to compel arbitration of the claims between EWEB and the subcontractors. AAC, MacTaggart, and Olsson filed a notice of appeal from the court's December 10, 2015, opinion.[3]
D. Order of January 21, 2016
The third order on appeal was issued January 21, 2016, and addressed petitions by AAC, MacTaggart, and Olsson to stay judicial proceedings and compel EWEB to arbitrate the negligence claims by EWEB against the subcontractors. We return again to the record. As previously noted, on September 25, 2015, EWEB had requested leave to file an amended complaint. Given leave, EWEB filed a first amended complaint alleging negligence claims against MacTaggart and Olsson. MWH filed an answer *50 and affirmative defenses against EWEB's first amended complaint.
On December 3, 2015, MacTaggart filed a petition to compel arbitration of EWEB's claim against MacTaggart and to stay judicial proceedings on that claim pending completion of "contractually agreed binding arbitration." MacTaggart asserted that the obligation to arbitrate the claim against MacTaggart was imposed by a "flow-down arbitration provision" in the prime contract that required AAC to require that its subcontractors "be bound by the terms and conditions of these General Conditions" and "assume toward the Contractor all the obligations and responsibilities which the Contractor assumes toward the Owner thereunder[.]" The petition did not allege that EWEB had refused to arbitrate its direct claims against MacTaggart. Olsson filed a similar motion on the same date, and AAC filed a memorandum in support of MacTaggart's and Olsson's motions.
On December 21, 2015, EWEB filed a response in opposition to MacTaggart's and Olsson's petitions to stay judicial proceedings and compel arbitration, challenging the subcontractors' interpretation of the prime contract and their view that it requires EWEB to arbitrate its claims against them. EWEB's main argument was that the arbitration provision in the prime contract applies only to the parties to that contract, EWEB and AAC, and that the provision does not extend to subcontractors with whom EWEB does not have an agreement to arbitrate. AAC, MacTaggart, and Olsson replied, asserting, among other arguments, that the arbitration provision in the prime contract was incorporated by reference into AAC's contracts with *148 its subcontractors and that, by virtue of the "flow-down" provision, EWEB was bound by the arbitration provision with respect to the subcontractors.
The court held a hearing on January 11, 2016, on MacTaggart's and Olsson's petitions to stay judicial proceedings and compel arbitration. The court, by Judge Carlson, issued an order on January 21, 2016, denying the petitions, concluding, once again, that there is no enforceable agreement to arbitrate between EWEB and the subcontractors.
*51 AAC, MacTaggart, and Olsson filed notices of appeal from the January 21, 2016, order.
II. ASSIGNMENTS OF ERROR
A. First Assignment
Each of the defendants assigns error to the trial court's order of September 9, 2015, denying AAC's petition to stay judicial proceedings and compel arbitration of EWEB's claims against AAC. We review the trial court's ruling for errors of law. DeLashmutt v. Parker Group Investments, LLC , 276 Or. App. 42, 44, 366 P.3d 769 (2016) (trial court's denial of motion to compel arbitration is reviewed for errors of law); Citigroup Smith Barney v. Henderson , 241 Or. App. 65, 69, 250 P.3d 926 (2011) (same).
Defendants argue that EWEB's claims against AAC were subject to arbitration under the prime contract and the stipulation of EWEB and AAC to arbitrate. The trial court acknowledged as much in its November 5, 2015, order. There is no dispute that AAC and EWEB had an agreement to arbitrate. The court, however, did not compel arbitration or order a stay of the remaining claims. Defendants contend that that was error, because the court was required to compel arbitration. Specifically, AAC contends that EWEB refused to arbitrate when, at a hearing, EWEB subsequently requested that the court set aside the stipulation to arbitrate. We reject the contention that the court was required to compel arbitration in these circumstances involving willing parties. The governing statute, ORS 36.625, provides, in part:
"(1) On petition of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement:
"(a) If the refusing party does not appear or does not oppose the petition, the court shall order the parties to arbitrate; and
"(b) If the refusing party opposes the petition, the court shall proceed summarily to decide the issue as provided in subsection (8) of this section and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate.
*52 "* * * * *
"(3) If the court finds that there is no enforceable agreement to arbitrate, it may not order the parties to arbitrate pursuant to subsection (1) or (2) of this section.
"* * * * *
"(6) If a party makes a petition to the court to order arbitration, the court on just terms shall stay any judicial proceeding that involves a claim alleged to be subject to the arbitration until the court renders a final decision under this section.
"(7) If the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration. If a claim subject to the arbitration is severable, the court may limit the stay to that claim.
"(8) A judge shall decide all issues raised under a petition filed under ORS 36.600 to 36.740 [.]"
(Emphasis added.) Under that statute, a court is required to compel arbitration only when the petition alleges the refusal of another person to arbitrate pursuant to an agreement. Cf. Moresi v. Nationwide Mutual , 309 Or. 619, 622, 789 P.2d 667 (1990) (an actual refusal to arbitrate is required before court may compel arbitration under former version of statute requiring that a party be "aggrieved by the failure, neglect or refusal of another to perform under a contract or submission providing for arbitration") As noted, AAC's petition failed to allege that EWEB had refused to arbitrate. Accordingly, the petition lacked a critical element needed to justify an order.
AAC contends that EWEB's refusal to arbitrate occurred at the hearing, when *149 EWEB requested that the court set aside the parties' stipulation to arbitrate. At the hearing, however, EWEB did not contend that it was free to refuse to arbitrate. EWEB did not contend that it was not bound by the parties' stipulation to arbitrate. EWEB only asked the court to set the stipulation aside. The request for the court to set the stipulation aside did not undo the stipulation. The court rejected EWEB's request and left the stipulation in force. In this context, we observe that ORS 36.625(8) *53 provides that "[a] judge shall decide all issues raised under a petition" to compel arbitration. The petition here did not put a refusal at issue, and the stipulation assumed that there was no such issue. See ORS 36.625(1) (requiring allegation of refusal to arbitrate). As the court explained in its order of November 5, 2015, EWEB's claims against AAC were stayed because those parties had an agreement to arbitrate and had stipulated to arbitration and to a stay of the claims between them. There had been no refusal alleged or presented. Accordingly, as a matter of law, EWEB did not refuse to arbitrate. For that reason, we conclude that the court did not err in denying the initial petition to compel arbitration to which EWEB and AAC were already committed.
MacTaggart separately argues that the trial court erred in denying the petition to stay AAC's third-party claims against MacTaggart and Olsson. Because that same argument is made in the second assignment, we address it there.
B. Second Assignment
In their second assignment, defendants contend that the trial court erred in its order of December 10, 2015, in refusing to compel arbitration of AAC's third-party claims against MacTaggart and Olsson and refusing to stay the claims as to those parties, as provided in their stipulated petitions to compel arbitration and stay judicial proceedings. In its order, the court explained that it did not need to compel arbitration as to those third-party claims, because the parties had stipulated to binding arbitration. That conclusion was correct. Because AAC, MacTaggart, and Olsson had stipulated to binding arbitration as to AAC's third-party claims against the subcontractors, there was no basis for the court to compel arbitration as between those parties. Under ORS 36.625, the court shall require parties to arbitrate their disputes, upon a petition "showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement," ORS 36.625(1)(a), and shall order a stay of remaining claims, ORS 36.625(7). In the absence of an allegation or an actual refusal to arbitrate pursuant to their agreement, the court had no basis on which to compel arbitration or to order a stay of those claims *54 pursuant to ORS 36.625. In view of their agreement to arbitrate the third-party claims, and in the absence of a refusal to arbitrate, the court did not err in denying the petitions by AAC, MacTaggart, and Olsson to compel arbitration of the third-party claims.
C. Third Assignment
In their third assignment, defendants challenge the trial court's order of January 21, 2016, in which it refused to compel EWEB to arbitrate its claims against MacTaggart and Olsson. Defendants assert that the prime contract, together with its supplemental provisions, constitutes an agreement to arbitrate by EWEB.
It is the court's responsibility to determine whether the parties have agreed to arbitrate, as a matter of contract construction. DeLashmutt , 276 Or. App. at 46, 366 P.3d 769. As noted, ORS 36.625 provides, in part:
"(1) On petition of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement:
* * * * *
"(b) If the refusing party opposes the petition, the court shall proceed summarily to decide the issue as provided in subsection (8) of this section and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate.
"* * * * *
"(8) A judge shall decide all issues raised under a petition filed under ORS 36.600 to 36.740 unless there is a constitutional right to jury trial on the issue."
*150 As we recently explained in DeLashmutt , 276 Or. App. at 46, 366 P.3d 769, the question whether claims are subject to arbitration is one of contract interpretation to which ordinary rules of contract interpretation apply.
In DeLashmutt , the parties sought to develop and finance a new destination resort in Central Oregon. They entered into an Investment Agreement that included a provision addressing dispute resolution of "any controversies or claims between the Borrower and Lender." The agreement *55 defined the Borrower as Thornburgh Resort Company, LLC, and defined the Lender as Parker Group Investment. The agreement provided that "[a]ny claim shall be submitted to binding arbitration." DeLashmutt , 276 Or. App. at 45, 366 P.3d 769. Subsequent to the execution of the agreement, a third party lent money to the resort. The parties to the Investment Agreement guaranteed repayment of the note. When the resort defaulted on the note, the third party brought claims against the guarantors, who in turn filed counterclaims and third-party claims against a coinvestor, Kameron. Kameron sought to compel arbitration of the counterclaims and third-party claims pursuant to the arbitration provision. The investment group responded that the arbitration provision, by its plain terms, applied only to disputes between the "Borrower" and "Lender" as defined in the agreement and did not apply to the dispute between the parties.
The trial court denied the request to compel arbitration, and we affirmed. We explained that the Investment Agreement was unambiguous as to the scope of the parties' agreement to arbitrate and demonstrated that they did not intend to arbitrate the claims and counterclaims asserted against Kameron. Id. at 46, 366 P.3d 769. We held that the agreement's statement that the arbitration provisions apply only to disputes between the Borrower and the Lender "indicates that the parties' agreement to arbitrate extends only to disputes between those two entities, and does not encompass disputes between different sets of parties to the Investment Agreement[.]" Id . at 47, 366 P.3d 769. We explained that nothing in the context of the arbitration provision suggested that it applied to other parties. Id.
Here, the source of the alleged obligation to arbitrate is the prime contract between EWEB and AAC, as supplemented. The contract defines EWEB as "Owner," and AAC as "Contractor." In the section of the prime contract on "General Conditions," the contract includes Section B.16, entitled "LITIGATION," which states:
"Any Claim between Owner and Contractor that arises from or relates to this Contract and that is not resolved through the Claims Review Process in Section D.3 shall be brought and conducted solely and exclusively within *56 the Circuit Court of the State of Oregon for Lane County; provided, however; if a Claim must be brought in a federal forum, then it shall be brought and conducted solely and exclusively within the United States District Court for the District of Oregon. In no event shall this section be construed as a waiver by EWEB on any form of defense or immunity, whether sovereign immunity, governmental immunity, immunity based on the Eleventh Amendment to the Constitution of the United States or otherwise, from any claim or from the jurisdiction of any court. CONTRACTOR BY EXECUTION OF THIS CONTRACT HEREBY CONSENTS TO THE IN PERSONAM JURISDICTION OF THE COURTS REFERENCED IN THIS SECTION B.16."
(First emphasis added; capitalization in original.) The provision relating to arbitration is added to Section B.16 by a section entitled "Supplemental General Conditions":
"Add the following to the end of Section B.16-LITIGATION:
"If any dispute arises between the parties , either party may request arbitration and appoint an arbitrator. The other party shall also choose an arbitrator, and the two arbitrators shall choose a third. If the choice of the second or third arbitrator is not made within ten (10) days of the choosing of the prior arbitrator, then either party may apply to the presiding judge of the Circuit Court of the State of Oregon for Lane County to appoint the required arbitrator. The arbitrators shall proceed according to the Oregon statutes governing *151 arbitration. Arbitration shall take place in Lane County. The parties shall share costs of the arbitration equally, but each party shall pay its own attorney fees incurred in connection with the arbitration."
(Emphasis added.) It is not disputed that EWEB and AAC are the "Owner" and "Contractor," respectively, described in Section B.16. As between EWEB and AAC, it is undisputed that the prime contract allows "either party" to request binding private arbitration of "any dispute."
The question here is, when claims are brought by or against entities who are not parties to the prime contract, such as the subcontractors here, whether those entities are "parties," within the meaning of the arbitration provision, who may also insist on arbitration under Section B.16. Because arbitration is strictly a matter of consent, *57 DeLashmutt , 276 Or. App. at 46, 366 P.3d 769 ; see also Adair Homes, Inc. v. Dunn Carney , 262 Or. App. 273, 277, 325 P.3d 49, rev. den. , 355 Or. 879, 333 P.3d 333 (2014) (citing Granite Rock Co. v. International Broth. of Teamsters , 561 U.S. 287, 299, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010) ), the goal in construing the contract is to determine whether the parties agreed to arbitrate a particular dispute. Id. As noted, that is a question of contract interpretation to which we apply ordinary rules of contract interpretation-specifically, we examine the text, in context of the pertinent provisions, to determine the parties' intentions, and, if the text and context of the contract express an unambiguous indication of the parties' intentions, our analysis is complete. Id.
As defendants point out, the threshold to show ambiguity in a contract is not high. Central Oregon Independent Health Serv. v. OMAP , 211 Or. App. 520, 529, 156 P.3d 97, rev. den. , 343 Or. 159, 164 P.3d 1160 (2007) (a contract term is ambiguous if, when examined in the context of the contract as a whole and the circumstances of contract formation, it is susceptible to more than one plausible interpretation). At a minimum, defendants contend, the prime contract and the subcontracts are susceptible to a plausible interpretation that the arbitration provision in the prime contract extends to all parties to any dispute under the contract-even as to nonparties to the contract-and that any ambiguity should therefore be resolved in favor of arbitration. Industra/Matrix Joint Venture v. Pope & Talbot , 341 Or. 321, 332-33, 142 P.3d 1044 (2006) (ambiguities as to the scope of an arbitration clause are resolved in favor of arbitration); Livingston v. Metropolitan Pediatrics, LLC , 234 Or. App. 137, 227 P.3d 796 (2010) (Oregon, like the federal courts, recognizes a presumption in favor of arbitrability when construing arbitration clauses in a contract). Defendants point out that the arbitration provision states that it applies to "any" dispute under the contract, which they contend extends to disputes under the contract involving nonparties to the contract.[4] But, as defendants also note, the provision also states that *58 it applies to any dispute between the parties . The question remains: Who are "the parties"?
Contrary to defendants' suggestion, we do not accept that the phrase "between the parties" extends the availability of arbitration to any entity in any dispute relating to the contract. Rather, "the parties" is an unambiguous reference to the parties to the prime contract itself. That understanding is confirmed by the prime contract, which uses the term "the parties" as a reference to the Owner and the Contractor. In the section defining contract terms, the contract defines "Contract" as "the written agreement between the Owner and the Contractor describing the Work to be done and the obligations between the parties ." (Emphasis added.)
Further, the arbitration provision must be read as a part of Section B.16. Section B.16 applies to claims between "Owner" and "Contractor," terms that are specifically defined in the contract. The arbitration provision's use of the definite article, the parties, suggests a reference back to those parties previously named, the "Owner" and "Contractor," who, as noted, are also described as the parties to the contract. See State v. Lykins , 357 Or. 145, 159, 348 P.3d 231 (2015) ("As a grammatical matter, the definite article, 'the,'
*152 indicates something specific, either known to the reader or listener or uniquely specified."). Based on the plain text of the contract and Section B.16, we conclude that the reference to "the parties" in the arbitration provision is a reference to the parties to the contract previously named in the first sentence of the paragraph, the "Owner" and the "Contractor," that is EWEB and AAC.
Other textual clues reinforce our conclusion. Although the contract defines "Subcontractor," Section B.16 does not make reference to subcontractors, which could easily have been done, if that had been intended. That conspicuous absence indicates an intention not to encompass subcontractors within the provisions relating to litigation and arbitration. In addition, the method of selecting arbitrators, described in the arbitration provision, contemplates its application to the two parties to the contract. The arbitration clause provides that either party may request arbitration and appoint an arbitrator, suggesting a reference to one of the two contractual parties. The clause then provides that *59 the other party will select a second arbitrator, and the two arbitrators will then select a third. That structure limits the selection of arbitrators to the two parties to the contract named in the opening sentence of Section B.16, the "Owner" and the "Contractor," that is, EWEB and AAC. We conclude that there is no ambiguity and that the arbitration provision in the prime contract itself applies only to EWEB and AAC.
Defendants refer to a paragraph in the prime contract that they describe as a "flow-down" provision, which they contend incorporated the arbitration provision, by "conduit," into the subcontractor agreements and brought "downstream subcontractors and suppliers into each and every proceeding in which EWEB would be a party, effectively creating a direct right of action via a single forum." As supplemented, Section B.11.1 provides:
"Contractor shall require each Subcontractor, to the extent of the Work to be performed by Subcontractor, to be bound by the terms and conditions of these General Conditions and all other Contract Documents, and to assume toward the Contractor all the obligations and responsibilities which the Contractor assumes toward the Owner thereunder, unless (1) the same are clearly inapplicable to the subcontract at issue because of legal requirements or industry practices, or (2) specific exceptions are requested by Contractor and approved in writing by Owner. Where appropriate, Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors at any level."
(Emphasis added.) Although the subcontracts do not include arbitration provisions, they do reference the prime contract. The AAC/Olsson subcontract provided:
"Subcontractor, by signing this Agreement *** agrees that all of the aforesaid Prime Contract documents shall be considered a part of this Subcontract by reference thereto and the Subcontractor agrees to be bound to the Contractor and Owner by the terms and provisions thereof so far as they apply to the Work hereinafter described, unless otherwise provided herein."
(Emphasis added.) The AAC/MacTaggart subcontract provided that MacTaggart, as "seller," agreed to provide to AAC, *60 as "Contractor," all material necessary in the construction of the Leaburg Dam Gate Improvement Project,
"in accordance with the terms and provisions of the Contract between the Owner and the Contractor *** and the General and Special Conditions, Drawings and Specifications prepared by EWEB, hereinafter called the Architect or Engineer, forming part of the Contract between the Contractor and Owner of which to the extent defined herein shall be considered part of this agreement."
(Underscoring in original.)
In defendants' view, Section B.11.1 of the prime contract required AAC to include in its subcontracts provisions binding subcontractors to the terms of the prime contract. Further, defendants contend, the subcontracts with MacTaggart and Olsson incorporated the terms of the prime contract, including its arbitration provision, into AAC's contracts with its subcontractors, as required by Section B.11.1, and thereby bound EWEB
*153 to arbitration with the subcontractors . Thus, defendants contend, even if the arbitration provision of the prime contract applies only to disputes between EWEB and AAC, Section B.11.1, by requiring identical contract provisions down the chain of subcontractors, created arbitration agreements between EWEB and any subcontractor and any subsubcontractor.
It may be that some "flow-down" or "conduit" provisions in construction contracts have the effect that defendants assert of binding an owner to arbitrate with subcontractors down the chain of contracts. See, e.g. , United Tunneling Enterprises, Inc. v. Havens Const. Co., Inc. , 35 F.Supp.2d 789, 794-95 (D. Kan. 1998) ; Industrial Indem. Co. v. Wick Const. Co. , 680 P.2d 1100, 1103-04 (Alaska 1984) (under a flow down or conduit clause in a subcontract stating that "the Subcontractor shall assume toward the Contractor all the obligations and responsibilities which the Contractor assumed against the owner and shall be entitled to all the privileges and protections granted to the Contractor, by the owner, by the main contract," the parties to the subcontract assume the correlative position of the parties to the prime contract).
As with any contract provision, however, whether Section B.11.1 of the prime contract reflects EWEB's agreement to be bound by arbitration in the event of a dispute *61 with a subcontractor is a question of contract interpretation. It is a question that depends on the text of the provision and its context in this contract. See DeLashmutt , 276 Or. App. at 46, 366 P.3d 769. As we interpret the text of Section B.11.1 of the prime contract, it does not reflect an agreement by EWEB to give subcontractors a right to request arbitration.
Section B.11.1 states that the contractor must require subcontractors, as to the work to be performed by the subcontractors, to be bound to the terms and conditions of all contract documents, and to assume toward the contractor all the obligations and responsibilities which the contractor assumes toward the owner. Thus, Section B.11.1 imposes requirements on AAC-as the contractor -with respect to contracts between AAC and its subcontractors. But Section B.11.1 does not create an agreement between EWEB and the subcontractors or impose on the subcontractors obligations and responsibilities directly toward EWEB.
Additionally, Section B.11.1 explicitly applies "to the extent of the Work to be performed by Subcontractor," and makes absolutely no reference to rights or remedies under the prime contract. (Emphasis added.) As we understand the text of Section B.11.1, it addresses performance obligations and responsibilities of subcontractors to AAC , in the event that AAC contracts with a subcontractor for the performance of AAC's obligations toward EWEB under the prime contract and does not reflect an intention by EWEB to be bound to arbitration with the subcontractors.
In view of our conclusion that the prime contract, including Section B.11.1, does not reflect an intention by EWEB to be bound to arbitration with the subcontractors, we conclude that the fact that AAC's agreements with the subcontractors incorporated by reference the terms of the prime contract does not extend to the subcontractors the right to arbitration as against EWEB. Accordingly, the trial court did not err in its final order refusing to compel arbitration between EWEB and the subcontractors.
Affirmed.

AAC wrote:
"[AAC] understands that the subject Petition was worded all-encompassing and as such led to confusion between the parties. The intent of the pending Petition was to address those claims between AAC and EWEB."
Additionally, AAC wrote:
"It is evident *** that there is no dispute that all claims between EWEB and AAC are subject to independent binding arbitration. For this reason, both parties have requested that the matter be stayed as between them pending arbitration. Based on the parties' mutual agreement and ORS 36.625, AAC reiterates its request that the Court stay the above-captioned judicial proceeding as to those claims, and compel AAC and EWEB to resolve their claims via the contractually agreed method of independent, private binding arbitration."
(Emphasis added.)

In the November 5, 2015, order, the court also granted EWEB's motion to file an amended complaint to allege direct negligence claims against MacTaggart and Olsson. The November 5, 2015, order is not on appeal.

This court subsequently granted leave to the trial court to enter an appealable order. By that time, EWEB had amended its complaint to allege claims against MacTaggart and Olsson. The trial court, by Judge Rasmussen, declined to enter an order, explaining in a second opinion dated March 8, 2016, that the agreement to arbitrate and stay proceedings as to AAC's third-party claims against MacTaggart and Olsson was valid as between those parties, but provided no basis on which to stay the remaining claims-presumably, EWEB's claims against the subcontractors. This court allowed the appeal of the December 10, 2015, trial court opinion to proceed.

There is no contention by EWEB that, because EWEB's claims against MacTaggart and Olsson are in negligence, the claims do not arise from or relate to the contract.