DeVORE, J.
*544 This interlocutory appeal addresses whether an arbitration provision in a commercial lease requires a landowner to arbitrate with broadcasting tenants rather than proceed with their eviction on arguably arbitrable matters.[1] One of those tenants appeals from denial of its motion to compel arbitration over "subrents" received from subtenants. The trial court denied the motion to compel arbitration after concluding that the landowner sought only recovery of possession of the premises and that the eviction proceeding did not raise issues within the scope of a limited arbitration clause. We review for legal error. Citigroup Smith Barney v. Henderson , 241 Or.App. 65, 69, 250 P.3d 926 (2011). We conclude that landowner's allegations raised issues within the scope of the arbitration provision. We reverse and remand.
The dispositive facts are undisputed. The landowner, Black Tail Development, LLC (Black Tail), owns hilltop property near Eugene. Defendants Oregon TV, LLC (OTV) and KMTR Television, LLC (KMTR) own and operate television stations, respectively KEZI and KMTR, leasing space on the property for their broadcasting towers. Defendants' predecessors leased the premises for a number of years.
In 1998, defendants' predecessors and Black Tail negotiated a Renewal, Extension and Combination of Ground Leases (lease). Sections 3.1 and 3.2 of the lease provided a monthly "base rent" of $2,500 with prescribed increases over the years. Section 3.4 added "percentage rent" of 45 percent of any subrents from subtenants. "Subtenants" meant anyone to whom defendants rented space to be attached to defendants' equipment. Section 3.4 included provisions for audits related to subrents, arbitration of controversies over subrents, and record-keeping related to subrents.
In 2014, OTV succeeded to its predecessor's interest, and, in the course of that process, OTV sought Black Tail's consent to the assignment.[2] In response, Miller, a manager for Black Tail, sought information about occupants of the *545 premises. According to Miller, the lease required tenants to provide copies of all subleases, collect and disburse *1097 subrents, and maintain accurate records about subrents from subtenants. Miller believed that OTV and its predecessor, in breach of the lease, had failed to provide such information. According to Buckler, a representative of OTV, Miller's investigation for Black Tail was prompted by a lease-barter arrangement created in the past between OTV's predecessor and a third-party entity, Silke Communications, Inc. (Silke). According to Buckler, in June 2014, OTV's predecessor had provided to OTV and Black Tail copies of at least 12 subleases, including the arrangement with Silke, as well as photographs, inventory information, and spreadsheets. Additionally, OTV had received some responsive documents from Silke that OTV did not share with Black Tail because Black Tail refused to sign a confidentiality agreement. In January 2015, Black Tail notified defendants that it was terminating the lease immediately. Despite negotiations, in August 2015, Black Tail again asserted that OTV was in default, claiming, among other things, that OTV had not provided records and had not paid all subrents due. In September 2015, OTV demanded arbitration but received no response. The parties pursued mediation but without success.
In December 2015, Black Tail filed this action for forcible entry and detainer (FED) alleging defendants' breach of the lease and seeking possession of the premises. In January 2016, OTV filed a motion to compel arbitration and dismiss the proceedings. Initially, the trial court denied the motion to dismiss but deferred ruling on arbitration until later. In April 2016, the trial court denied the motion to arbitrate based upon a conclusion that the breaches that Black Tail alleged were not within the scope of the lease's arbitration provision, which related to the "characterization or calculation" of subrent sums due to Black Tail. The court explained that Black Tail was "only asking for possession of the property and not asking the court to make a determination regarding the amount of rent due nor order that Defendants pay any amount of disputed subrents."
On appeal, OTV assigns error to the trial court's order denying the motion to compel arbitration. OTV argues that, because most, if not all, of Black Tail's allegations of *546 breach involve a dispute over the classification and calculation of subrents due, the eviction proceeding involves issues that must be arbitrated. Further, OTV argues that because the lease provides that no breach involving subrents can be deemed to occur until after a determination in arbitration of subrents due, OTV cannot be deemed to be in default as to subrents. Black Tail responds that, after mediation, an action in court is permitted; that the arbitration provision is narrowed to disputes over characterization or calculation of subrents; that Black Tail does not seek to recover subrents due; that the eviction proceeding seeks only possession; that the arbitration provision does not apply; and that the trial court property denied the motion to dismiss and to arbitrate. We agree with OTV, given the arbitration provision and almost all of the allegations of breach.
When interpreting an arbitration provision, we apply ordinary principles of contract interpretation. Gemstone Builders, Inc. v. Stutz , 245 Or.App. 91, 95-96, 261 P.3d 64 (2011). If text and context are unambiguous, then our analysis may be completed based on those terms. DeLashmutt v. Parker Group Investments, LLC , 276 Or.App. 42, 46, 366 P.3d 769 (2016) ; but see Batzer Construction, Inc. v. Boyer , 204 Or.App. 309, 313-18, 129 P.3d 773, rev. den. , 341 Or. 366, 143 P.3d 239 (2006) (allowing extrinsic evidence of circumstances under which agreement was made). If text and context are ambiguous, we look to evidence, if any, of extrinsic evidence of the parties' intent. If none, we apply maxims of contract interpretation, including a presumption in favor of arbitrability. Id . In this case, both parties have proceeded upon an understanding that arbitrability turns upon construction of the terms of the lease itself. No one has offered extrinsic evidence addressed to resolve any ambiguity in the arbitration provision.
We begin with the text and context of the arbitration provision and then compare Black Tail's allegations of breach of the lease. The arbitration provision is the second of two paragraphs in the lease's section 3.4.2, entitled "Audit." The first paragraph requires that tenant provide Black Tail a copy of any *1098 sublease and provides that, after a monthly percentage rent statement is due, Black Tail may request an *547 audit of a tenant's receipts and subrents. The second paragraph provides, in relevant part, for arbitration over these specific matters:
"Notwithstanding any other provision of this Renewal Lease to the contrary, in the event of any controversy, claim or dispute over the characterization or calculation of percentage rent due with respect to base subrents from a subtenant, the dispute shall be resolved by arbitration upon written demand therfor made by a party upon all other parties to the controversy, claim or dispute[.] * * * In no event shall a party be deemed to be in default in, or in breach of this lease with respect to, the payment of any percentage rentals due from a subletting of the Leased Premises that is the subject of any controversy, claim or dispute unless and until thirty (30) days have passed after a final determination has been made of the amount due and payable pursuant to the provisions of this Section 3.4.2 and such amount has not been paid within such thirty (30) day period."
Relatedly, section 3.4.3 provides that a tenant shall keep proper books of accounts and other records on subrents, which must be available or accessible to Black Tail, who may inspect them at all reasonable times to verify receipts.[3]
Black Tail's complaint alleged the existence of the lease, that OTV and KMTR were the current tenants, and that they were in breach of the lease by failing to
"a. Collect and timely pay [Black Tail] all base subrents due;
"b. Timely provide [Black Tail] copies of all subleases;
"c. Maintain accurate records regarding the base subrents;
"d. Provide [Black Tail] with timely and accurate monthly rent and base subrent statements;
*548 "e. Make records available and accessible to [Black Tail] to verify Tenants' receipts;
"f. Provide accurate information in the audit requested by [Black Tail] in 2014; and
"g. Comply with all applicable laws affecting the real property, including but not limited to certain FCC regulations."
The complaint also alleged that in Black Tail's letter of August 2015, which was attached, defendants were notified of their default. Among other things, that letter demanded that defendants "[p]ay all unpaid base subrents." The complaint further alleged that defendants failed to cure the default, prompting Black Tail to terminate the lease and, due to those defaults and the lease termination, Black Tail was entitled to possession of the property. Black Tail, however, did not seek unpaid rent or other damages.
In our review, we conclude that nearly all of the allegations of breach are within the scope of the arbitration provision. The parties agreed "in the event of any controversy, claim or dispute over the characterization or calculation of percentage rent due with respect to base subrents from a subtenant, the dispute shall be resolved by arbitration * * *." (Emphasis added.) And, the parties agreed that the tenants could not be deemed to be in default "with respect to the payment of any percentage rentals due from a subletting of the Leased Premises * * * unless and until thirty (30) days have passed after a final determination has been made of the amount due and payable * * *." For a number of reasons, the allegations of breach fall within the scope of those arbitration terms.
First, Black Tail's primary allegation of breach was a failure to pay "all" subrents due, and that failure "with respect to the payment of any percentage rentals" from subrents cannot be proven absent a "final *1099 determination * * * of the amount due and payable." Logically, that determination cannot be accomplished without a comparison of subrents already paid and subrents due. Although Black Tail does not seek damages or ask the court to calculate subrents, Black Tail does ask that the court determine that defendants are *549 in breach of the lease. Breach of the obligation to pay "all" subrents cannot be determined without a determination of a failure to pay some portion of subrents due. That payment allegation necessarily requires a "calculation" of "percentage rent due" in order to determine whether there is any breach at all.
Second, the "characterization" of percentage rent due on subrents is implicated by Buckler's undisputed averment that Black Tail's investigation "was prompted by a lease-barter arrangement" between OTV's predecessor and the third-party entity, Silke. OTV contended in the trial court that there was "a substantial question" about whether barter agreements were "subleases for which [Black Tail] must be paid." According to OTV, an old lease addressed the value of services exchanged, but the current lease did not use such language, thereby giving rise to OTV's suggestion that only financial payments constitute subrents. Because the value of a lease-barter arrangement with a subtenant is at issue, it is arbitrable as a matter of "characterization" of an exchange that is or is not subrent.
Third, the lease provides that any failure to pay subrents cannot be deemed to constitute a breach unless and until such a determination has been made in arbitration. Thus, as OTV contends, there can be no default in payment, as alleged in the complaint, in the absence of an arbitration of subrents due. The court could not evict defendants absent defendants' breach of the lease. By pleading a failure to pay "all" subrents, Black Tail pleaded an issue that is not only arbitrable, but that is not even a breach in the absence of completed arbitration.
Fourth, most of the other allegations of breach-allegations "b" through "f"-are equally arbitrable. As noted, the arbitration provision addresses "any" controversy "with respect to" subrents. The parties' declarations reflect that Black Tail's requests for documents involved the percentage rents involving subtenants. Consequently, Black Tail's allegations involving failures to provide records are controversies "with respect to" information needed to accomplish a calculation or characterization of subrents due. Those alleged breaches are likewise arbitrable.
*550 It is only the final allegation of breach-the alleged failure to comply with all applicable laws affecting the real property-that does not appear to relate to subrents. And, OTV does not contend that it does.[4]
In sum, we conclude that, with one exception, Black Tail's allegations of breach of the lease are arbitrable matters. We reach that conclusion based upon the unambiguous language of the lease. See DeLashmutt , 276 Or.App. at 46, 366 P.3d 769 (concluding agreement unambiguous). The parties have offered no extrinsic evidence of intent, and it is not necessary to rely on a presumption in favor of arbitrability. Id. at 48, 366 P.3d 769 (presumption employed only when provision ambiguous and in the absence of extrinsic evidence). Because six of the allegations are arbitrable, the trial court was required to order the arbitration of those matters. When doing so, "the court on just terms shall stay any judicial proceeding" that involves the arbitrable allegations. ORS 36.625(7). As to the one nonarbitrable allegation, the court may determine, in its discretion, if that allegation is severable or should likewise be subject to stay. See id . ("If a claim subject to the arbitration is severable, the court may limit the stay to that claim.); Harnisch v. College of Legal Arts, Inc. , 243 Or.App. 16, 26-27, 259 P.3d 67 (2011) (trial court exercised its discretion in determining scope of its stay). Accordingly, the trial court's order denying the motion to compel arbitration is reversed and remanded for proceedings consistent with this opinion.
Reversed and remanded.

This interlocutory appeal is permitted by ORS 36.730(1)(a) (denying an order to compel arbitration).

There is no dispute that, in July 2014, OTV succeeded to the lease.

Among other things, Black Tail argues that arbitration is only a subsequent consequence of an audit, and, because "[t]he FED action does not flow from the audit process," the arbitration provision does not apply. OTV responds that Black Tail pursued discovery of records-hence, an audit-and that the arbitration paragraph is not sequentially linked to completion of an audit. We agree with OTV that the arbitration clause is not sequentially or necessarily linked to the audit process, given the introductory clause in the arbitration provision ("[n]otwithstanding any other provision of the Renewal Lease to the contrary * * *").

In argument to the trial court, OTV advised that, after discovery, it had come to believe that Black Tail's last allegation of breach may relate to a spill or clean-up on the property.